UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MERIBETHE R. INGRAM | ) | CASE NO. |
| 32105 Burlwood Drive, | ) | |
| Solon, Ohio 44139, | ) | JUDGE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| JOSEPH V. REGANO | ) | |
| 7068 Erie Drive, | ) | **(Jury Demand Endorsed Hereon)** |
| Mentor, Ohio 44060 | ) | |
| in his official and individual capacity, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FRED E. BOLDEN, II | ) | |
| 33630 Outley Park Drive, | ) | |
| Solon, Ohio 44139 | ) | |
| in his official and individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Meribethe R. Ingram ("Ingram"), for her Complaint against Defendants Joseph

V. Regano ("Regano") and Fred E. Bolden, II ("Bolden"), hereby states as follows:

**INTRODUCTION**

1.     This is an action for deprivation of rights under 42 U.S.C. §1983 stemming from

Defendants' failure to provide Mrs. Ingram with the specific allegations against her, an opportunity

to respond to those allegations, and an impartial investigation before retaliating against her and

depriving her of her rights to continue working and volunteering at Lewis Elementary in Solon,

Ohio.

2.     Mrs. Ingram complained of sexual harassment and a hostile work environment in

December 2017.  The same day that Regano received Mrs. Ingram's harassment complaint, Mrs.

Ingram was retaliated against for filing that complaint.  When she later filed another complaint based on that retaliation in February 2018, she was punished by Regano based on allegations that were never provided to her, nor was she provided an opportunity to respond to those allegations. Had she been provided such an opportunity, Mrs. Ingram would have been able to refute the allegations against her.  She was never given that chance in violation of her Constitutional right to procedural due process and equal protection.

3.     Moreover, despite the veneer of an "independent" investigator, Regano and Bolden managed the investigation process into the retaliation complaint Mrs. Ingram filed against them. In doing so, Regano and Bolden denied Mrs. Ingram an impartial investigation into her complaint, which further denied Mrs. Ingram her Constitutional right to procedural due process and equal protection.

4.     As a result of Defendants' deliberate and willful violation of Mrs. Ingram's Constitutional right to procedural due process and equal protection, Mrs. Ingram suffered a loss of her work and her volunteer positions at Lewis Elementary.  Mrs. Ingram continues to suffer that loss, and she should receive actual and punitive damages from Defendants for their deliberate and willful violation of her Constitutional rights.

## PARTIES

5.     Plaintiff Meribethe R. Ingram resides in the city of Solon, which is in the county of Cuyahoga and State of Ohio.

6.     Defendant Joseph V. Regano resides in the city of Mentor, which is in the county of Lake and State of Ohio.  Mr. Regano serves as Superintendent of the Solon City Schools District (the "District").  Plaintiff is suing Defendant Regano in both his official and individual capacity.

7.     Defendant Fred E. Bolden, II resides in the city of Solon, which is in the county of Cuyahoga and State of Ohio.   Mr. Bolden serves as Business Manager and Assistant Superintendent for the District.   Since November 18, 2019, Mr. Bolden has been acting as Superintendent Pro Tempore while Mr. Regano is on a leave of absence.   Plaintiff is suing Defendant Bolden in both his official and individual capacity.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to original jurisdiction to hear the claims stated herein pursuant to 28 U.S.C. §1331 involving federal statutes.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §1331 because Defendants reside in or are located in the Northern District of Ohio.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

10.     Meribethe Ingram worked at Lewis Elementary in the following capacities:

A.  Substitute Teacher
B.  Reading Recovery Specialist
C.  Testing Assistant
D.  Backup Media Specialist
E.  Parent Workroom Coordinator

11.     When asked by the Lewis Elementary School Principal, Michael Acomb ("Acomb"), to become a substitute teacher, Mrs. Ingram agreed on the condition that she only be required to substitute at Lewis Elementary for grades Kindergarten to Second Grade.   Acomb agreed with that condition, and Mrs. Ingram was placed into the District's Absence Management System (known as "AESOP" at that time) as a substitute for Lewis Elementary only.

12.     When not substituting, Mrs. Ingram volunteered almost daily at Lewis Elementary because that is the school where her children attended, and where she knew children from her neighborhood.

13.     At no point throughout any of this matter has Mrs. Ingram ever been accused of behaving in any manner other than that of a professional while working and serving at Lewis Elementary.

**Mrs. Ingram's Reports of Harassment**

14.     On or about October 27, 2017, Acomb became aware that Mrs. Ingram was having difficulties with another teacher at Lewis Elementary.  Under District Policy 3362, the District's Anti-Harassment Policy (see Exhibit 1), Acomb should have addressed these difficulties under the informal complaint procedure as set forth in the District's Anti-Harassment Policy.  Acomb did not follow the District's Anti-Harassment Policy.  Instead, Acomb told Mrs. Ingram to continue to behave professionally.  She agreed to do so.  Acomb did not provide Mrs. Ingram with a copy of the District's Anti-Harassment Policy, nor did he take any actions to address her concerns.  Upon information and belief, Defendants were aware of Acomb's failure to follow the District's Anti-Harassment Policy and condoned his behavior.

15.     On or about December 7, 2017, Meribethe Ingram raised a complaint of sexual harassment and hostile work environment to Dan Ceci, Lewis Elementary guidance counselor.  He did nothing.

16.     On December 14, 2017, Mrs. Ingram reported a claim of sexual harassment and hostile work environment to Acomb.  Under the District's Anti-Harassment Policy, Mrs. Ingram's harassment complaint should have been treated as a formal complaint.  Therefore, Acomb should have followed the formal complaint procedure as set forth in the District's Anti-Harassment Policy.  Acomb failed to do so.  Instead, Acomb offered no help and took no action to assist Mrs. Ingram, leaving her to try to resolve the situation on her own.  Acomb never provided Mrs. Ingram

with a copy of the District's Anti-Harassment Policy, nor did he state that he would report Mrs. Ingram's harassment complaint to the District's Compliance Officer.

17.     On December 15, 2017, Acomb reported Mrs. Ingram's sexual harassment claim to Defendant Regano, District Superintendent and one of the District's Compliance Officers. Acomb never informed Mrs. Ingram that he had reported her claim.

18.     That same day, December 15, 2017, less than twenty-four hours after Mrs. Ingram made her complaint, Acomb retaliated against Mrs. Ingram by telling her that she was no longer welcome in Lewis Elementary.  Acomb told Mrs. Ingram that she "had to go"  because she "wounded the ego" of her harasser.  Acomb then had Mrs. Ingram's status changed in the District's AESOP system so that she could no longer substitute at Lewis Elementary.  Defendants were aware of Acomb's failure to follow the District's Anti-Harassment Policy, and his retaliation against Mrs. Ingram for reporting sexual harassment and a hostile work environment.  Defendants condoned these unlawful actions taken by Acomb in violation of the District's Anti-Harassment Policy.

19.     After Mrs. Ingram followed up with Acomb on December 26, 2017, regarding her harassment complaint, Defendants Regano and Bolden began an investigation into Mrs. Ingram's complaint of sexual harassment and hostile work environment.  During this time, the retaliation against Mrs. Ingram continued.

20.     On January 8, 2018, Mrs. Ingram provided Regano and Bolden with a written complaint against her harasser.

21.     On January 11, 2018, Regano, Bolden, and  Sherrie Massey, District counsel, met with Mr. and Mrs. Ingram.  Mrs. Ingram laid out her claim of sexual harassment and hostile work environment at Lewis Elementary.   No allegations against Mrs. Ingram were provided to her

during this meeting.  Mrs. Ingram was not provided a copy of the District's Anti-Harassment Policy during this meeting.  Regano and Bolden never met with Mrs. Ingram again regarding this matter.

**Defendants begin an investigation to attack Mrs. Ingram without providing her the protections afforded by the District's Anti-Harassment Policy.**

22.     On January 18, 2018, Regano and Bolden met with Mrs. Ingram's harasser for the first time regarding this matter.  Mrs. Ingram was never provided any information about that conversation, nor was she provided an opportunity to respond to any allegations that may have been mentioned during that conversation.

23.     On January 25, 2018, Mr. Ingram followed up with Regano to inquire about the status of the investigation.  Having heard nothing, Mr. Ingram followed up with Regano again on January 29, 2018.  In that follow-up, Mr. Ingram stated that Mrs. Ingram did not appear to be 100% on AESOP for substituting at Lewis Elementary.  He asked that that be corrected.

24.     On January 29, 2018, Bolden responded that Mrs. Ingram would not be allowed to substitute at Lewis Elementary pending an investigation into her actions.  This is the first time that Mrs. Ingram is told that she is under investigation.

25.     Mr. Ingram called Regano.  Regano asked Mr. Ingram to send an email with his response.  Mr. Ingram complied.  In his response, Mr. Ingram pointed out that Bolden's action constituted retaliation and was not what was stated at the end of the January 11th meeting.  He further pointed out the failure of Regano or Bolden to present any complaint against Mrs. Ingram that supported such retaliatory actions.

26.     After sending that email, Mr. Ingram received a call from Sherrie Massey, District counsel.  Mr. Ingram outlined the retaliatory actions being taken by Regano and Bolden against Mrs. Ingram.  Mr. Ingram asked for a copy of any alleged complaint against Mrs. Ingram.  District

counsel stated that it was an oral complaint.  Mr. Ingram asked to see a written complaint.  As of the date of this Complaint, no written complaint has ever been filed or provided to Mrs. Ingram asserting allegations against her during the pendency of this matter despite repeated requests from Mrs. Ingram for a written complaint of any allegations against her.

27.     During Mr. Ingram's discussion with District counsel, District counsel stated that the investigation into Mrs. Ingram's complaint against her harasser was being taken pursuant to District procedure.  She stated that a disposition would be provided at the end of the investigation, which she said would "take as long as it takes."  District counsel further stated that Mrs. Ingram would have the ability to respond after receiving the disposition.  Mr. Ingram pointed out that Mrs. Ingram had never been provided with any District procedures or policies regarding her December 14, 2017 harassment complaint.

28.     On January 29, 2018, District counsel promised to provide Mr. Ingram with any evidence showing a complaint against Mrs. Ingram, as well as provide him with copies of the District's investigation procedure.  No written complaint or documents evidencing any allegations against Mrs. Ingram were ever provided.  Nor was any detailed description of the facts underlying any alleged oral complaint provided to Mrs. Ingram.  Mr. Ingram did receive a copy of  the District's Anti-Harassment Policy, but it was received over two weeks after Mrs. Ingram's interview by Defendants Regano and Bolden.

**Defendants deliberately and willfully violate the District's Anti-Harassment Policy by denying Mrs. Ingram procedural due process.**

29.     After receiving a copy of the District's Anti-Harassment Policy on January 31, 2018, Mr. Ingram realized that Regano and Bolden had failed to follow that Policy.  At that same time, Mrs. Ingram became aware that Regano and Bolden had failed to provide her with procedural due process.

30.     On February 1, 2018, Mr. Ingram laid out to District counsel exactly the steps required to be taken by Regano and Bolden to provide Mrs. Ingram with procedural due process and comply with the District's Anti-Harassment Policy.  Regano and Bolden willfully refused to take the actions necessary to provide Mrs. Ingram with procedural due process.  At no point during this process do Regano and Bolden ever take the steps required by the District's Anti-Harassment Policy, even after being provided notice that such actions were required.

31.     If an oral complaint existed against Mrs. Ingram, as District counsel alleged, then it would have been an informal complaint.  The District's Anti-Harassment Policy states that the formal complaint process must be initiated if an informal complaint is considered unresolved:

> "If a complaint is not resolved through the informal complaint process, if one of the parties has requested that the informal complaint process be terminated to move to the formal complaint process, or if the individual elects to file a formal complaint initially, the formal complaint process shall be implemented."

32.     Accordingly, if the formal complaint process is not implemented, then any informal complaint is considered resolved by definition.  Since no formal complaint was ever filed against Mrs. Ingram, any oral complaint against Mrs. Ingram is deemed resolved per the District's Anti-Harassment Policy.

33.     Per the District's Anti-Harassment Policy, the formal complaint process requires certain mandatory steps be taken for it to be implemented:

> "All formal complaints must include the following information to the extent it is available:  the identity of the individual believed to have engaged in, or be engaging in, offensive conduct/harassment/retaliation; a detailed description of the facts upon which the complaint is based; a list of potential witnesses; and the resolution sought by the Complainant.
>
> If the Complainant is unwilling or unable to provide a written statement including the information set forth above, the Compliance Officer shall ask for such details in an oral interview. Thereafter, the Compliance Officer will prepare a written summary of the oral interview, and the Complainant will

be asked to verify the accuracy of the reported charge by signing the document."

34. At no point were any of these mandatory steps taken to institute a formal complaint against Mrs. Ingram.

35. Further, if a formal complaint had been filed, certain procedural protections had to be provided to Mrs. Ingram:

> "Simultaneously, the Compliance Officer will inform the individual alleged to have engaged in the harassing or retaliatory conduct, hereinafter referred to as the "Respondent", that a complaint has been received. The Respondent will be informed about the nature of the allegations and provided with a copy of any relevant administrative guidelines, including the Board's Anti-Harassment policy. The Respondent must also be informed of the opportunity to submit a written response to the complaint within five (5) business days."

36. None of those procedural protections were provided to Mrs. Ingram. In fact, Mrs. Ingram did not receive notice of the District's Anti-Harassment Policy until over two weeks after being interrogated by the Defendants.

37. Defendants have acknowledged that no formal complaint has ever been filed against Mrs. Ingram.

38. As stated above, the District's Anti-Harassment Policy requires that a formal complaint be implemented and certain protections provided before Defendants could deny Mrs. Ingram her property interests in working and serving at Lewis Elementary. Because no formal complaint has ever been filed against Mrs. Ingram, and because no procedural protections were provided to Mrs. Ingram, any disciplinary actions taken by Defendants Regano and Bolden against Mrs. Ingram constitute unlawful retaliation.

39. Over the next several weeks, Mrs. Ingram objected to the retaliation taken against her as a result of her December 14, 2017 report of sexual harassment and hostile work environment.

Mrs. Ingram sought to resolve this matter with the Defendants, but the Defendants willfully and deliberately failed to take any action to halt the retaliation against Mrs. Ingram.

**Mrs. Ingram files her February 27th Retaliation Complaint against the Defendants.**

40. On February 27, 2018, Mrs. Ingram filed a Retaliation Complaint ("February 27th Retaliation Complaint") under the District's Anti-Harassment Policy against Defendants because the material adverse action against her remained in place even though she had never received a written complaint, an opportunity to respond to any allegations, or an impartial hearing. The February 27th Retaliation Complaint was filed against Michael Acomb, Fred Bolden, any District administrator, teacher, or staff member who directed, advised upon, or authorized the retaliatory actions, and any third party advisor who directed, advised upon, or authorized the retaliatory actions.

41. On or about March 6, 2018, Katie Clifford ("Clifford") contacted Mr. Ingram to inform him that she had been appointed as an independent investigator to investigate Mrs. Ingram's February 27th Retaliation Complaint.

**Defendants unlawfully supervise the investigation into their retaliation against Mrs. Ingram.**

42. On March 6, 2018, Clifford contacted Regano to set up interviews for March 9, 2018. Regano immediately contacted Bolden to "talk."

43. On March 7, 2018, Bolden took charge of setting up interviews for Clifford even though Bolden was the subject of those interviews. These actions enabled Bolden to let each potential witness know that he knew they were being interviewed, and that he would be watching them.

44.     Both Regano and Bolden have admitted that they were respondents in this investigation.  Both Defendants also have admitted that they should not have been involved in this investigation based on their status as respondents.

45.     Internal emails and statements from Defendants Regano and Bolden demonstrate that Defendant Regano directed Defendant Bolden to be directly involved in the investigation into Defendants' retaliation against Mrs. Ingram.

46.     Based on Regano's direction, Defendant Bolden took the following actions regarding the investigation into Defendants' misconduct:

A. Discussed the investigation with the investigator throughout the duration of the investigation;
B. Scheduled witness interviews;
C. Directly contacted witnesses;
D. Discussed Mrs. Ingram's involvement in the investigation with certain witnesses;
E. Pulled emails from the server and decided what emails should be given to the investigator;
F. Coordinated the gathering of exhibits;
G. Personally handled the review and redaction of key video and emails;
H. Directed the investigator what to do with her investigation report after consulting with his boss, Defendant Regano, who was also a respondent in the investigation of Plaintiff's February 27th Retaliation Complaint; and
I. Instructed the District's compliance officer on what to do with the investigation report.

**Defendant Regano issues the March 14th Disposition against Mrs. Ingram to retaliate against her for filing the February 27th Retaliation Complaint.**

47.     On March 9, 2018, Clifford interviewed Mrs. Ingram.  During that interview, Clifford asked who Mrs. Ingram meant by any District administrator, teacher, or staff member who directed, advised upon, or authorized the retaliatory actions.  Mrs. Ingram stated that she meant Defendant Regano and anyone who assisted him.  Upon information and belief, Clifford notified Regano that same day that he was a respondent in the investigation.  Regano has admitted that he knew he was a respondent in the February 27th Retaliation Complaint.

48.     Three business days later, on March 14, 2018, Regano issued a disposition against Mrs. Ingram stating that she harassed her harasser.  The disposition held that Mrs. Ingram would no longer be allowed "access to the [Lewis Elementary] building for purposes of volunteer activities through the PTA or substitute employment."  This disposition stripped Mrs. Ingram of her property interest in the employment and volunteer activities she performed at Lewis Elementary as described herein.

49.     After receiving Mrs. Ingram's request for the investigation report underlying the disposition, Regano provided Mrs. Ingram with a Confidential Investigation Report on March 15, 2018, that allegedly provided the underlying support for the disposition issued on March 14, 2018 (the March 14, 2018 Disposition and the March 15, 2018 Confidential Investigation Report will be referred to collectively as the "March 14th Disposition").

50.     The March 14th Disposition allegedly related back to the formal complaint filed by Mrs. Ingram against her harasser.  No formal complaint has ever been filed against Mrs. Ingram.

51.     Upon information and belief, Mrs. Ingram's harasser, a male teacher at Lewis Elementary, received notice of the allegations raised against him by Mrs. Ingram.  Upon information and belief, Mrs. Ingram's harasser received an opportunity to respond to those allegations during his January 18, 2018, meeting with Defendants Regano and Bolden.

52.     Even though Defendants Regano and Bolden provided her male harasser with notice of the allegations against him and an opportunity to respond before the March 14th Disposition was issued, no such due process was provided to Mrs. Ingram.

53.     At no point during this process were the specific allegations against Mrs. Ingram, as set forth in the March 14th Disposition, provided to Mrs. Ingram, nor was she ever given an

opportunity to respond to those specific allegations before Defendant Regano took away Mrs. Ingram's property interests.

54.     This March 14th Disposition contained allegations that had never been provided to Mrs. Ingram, nor was she given a chance to respond to those allegations.  Instead, Defendant Regano abused his power as District Superintendent and District Compliance Officer by using the March 14th Disposition to punish Mrs. Ingram for filing the February 27th Retaliation Complaint against Defendants.

55.     As Regano was a respondent in the February 27th Retaliation Complaint, Regano possessed a conflict of interest related to any actions taken regarding Mrs. Ingram.  Therefore, Regano should have recused himself from any further investigation into Mrs. Ingram's December 14, 2017 harassment complaint.  And, based on Regano's clear conflict of interest, he should not have issued the March 14th Disposition.  There was no practical or logistical reason that Defendants needed to remain involved in any investigation related to Mrs. Ingram.  Debbie Siegel, an Assistant Superintendent and the District's other Compliance Officer, could have easily taken over the investigation into Mrs. Ingram's December 14, 2017 harassment complaint.  Moreover, no formal complaint had ever been filed against Mrs. Ingram.  By not recusing himself after the February 27th Retaliation Complaint was filed, Defendant Regano violated District Policy 1130, the District's Conflict of Interest Policy (see Exhibit 2), and denied Mrs. Ingram an impartial decision maker as required by procedural due process.

56.     To support the March 14th Disposition, Defendants claimed that Mrs. Ingram allegedly agreed to the retaliation taken against her on December 15, 2017.  There is no written agreement where Mrs. Ingram agreed to lose her property interest in her employment and service at Lewis Elementary.  All that Plaintiff ever agreed to was to behave professionally while at Lewis

Elementary.  She did so.  Mrs. Ingram never agreed to be subject to harassment, a hostile work environment, and retaliation.

**Defendants act to ensure that Mrs. Ingram does not get an impartial hearing during the appeals process.**

57.    On March 19, 2018, Mrs. Ingram appeals the March 14th Disposition.

58.    On March 27, 2018, Clifford asked Bolden how to handle sending the investigation report and exhibits for the February 27th Retaliation Complaint to Ms. Siegel, who was allegedly acting as the Compliance Officer for the February 27th Retaliation Complaint.  Bolden consulted with Regano on what to do.  Bolden then directed the "independent" investigator to send the report to Ms. Siegel.  Bolden added that he would handle getting Ms. Siegel the exhibits.  Up to this point, Ms. Siegel had not been involved in the investigation process for the February 27th Retaliation Complaint even though she was allegedly acting as the District's Compliance Officer for this matter.

59.    On March 27, 2018, Clifford sent the report for the February 27th Retaliation Complaint to Ms. Siegel "per Fred Bolden's request."  Siegel immediately emailed Bolden and asked "What am I to do with this?"  Bolden told her to "Hang on to it for right now.  Joe [Regano] will explain on Tuesday."  It appears that, despite earlier assertions, Ms. Siegel had no knowledge of the investigation until that time.  Then, once she was informed, Bolden told her to do nothing until Regano told her what to do.  Siegel complied and acted according to the direction of Bolden and Regano rather than acting as an independent compliance officer.

60.    On April 1, 2018, Clifford sent Siegel the final investigation report for the February 27th Retaliation Complaint.  Siegel then sent the report to Regano.  Regano then sent it to Bolden.  As the Disposition was not completed until April 5, 2018, Bolden and Regano were improperly given the ability to review the report and exhibits and influence the final disposition.

61.    On April 5, 2018, Ms. Siegel issued her disposition denying the claims in the February 27th Retaliation Complaint (the "April 5th Disposition"). Ms. Siegel later admits that she did not even know the details of the February 27th Retaliation Complaint until April 23, 2018, even though Ms. Siegel denied the claims raised in the February 27th Retaliation Complaint on April 5, 2018.

62.    On April 5, 2018, Mrs. Ingram informed Siegel that she intended to appeal the denial of the February 27th Retaliation Complaint. Siegel's first action was to ask Bolden "What should I do?" Bolden told her that "Massey [District counsel] will provide the document for us." Siegel's response was to confirm that "Ok so nothing for me to do?"

63.    On April 12, 2018, Mrs. Ingram appealed the April 5th Disposition.

64.    On April 23, 2018, the Solon City Schools District Board of Education (the "Board") heard both of Mrs. Ingram's appeals. This is the hearing where Ms. Siegel states that she first learned of the claims raised in the February 27th Retaliation Complaint even though she denied that Complaint on April 5, 2018.

65.    After the April 23rd hearing on Mrs. Ingram's appeals, the Board contacted Mrs. Ingram to see if she was interested in a settlement.

66.    On May 23, 2018, Regano sends a message to the Board that "[a]t this point negations [sic] with the Ingram's [sic] have gotten to a point where no further progress can be made." Based on this email, the Board appears to have abdicated its role as decision maker to Defendants Regano and Bolden. Regano told the Board that settlement was not possible, even though Regano had a conflict of interest in deciding this matter. By delegating their authority to Defendants, there was no possibility that Mrs. Ingram received an impartial hearing on her appeals of the March 14th Disposition and the April 5th Disposition.

67.     On May 25, 2018, the Ingrams filed a public records request with the District.

**Defendant Regano knowingly and willfully misrepresents the timeline and facts in this matter to cover up Defendants' unlawful acts.**

68.     On May 25, 2018, Regano made a false statement to the District's insurer to obtain insurance coverage for Defendants' misconduct.  Regano sent an email to Cathy Rice at the Love Insurance Agency stating that Mrs. Ingram's harasser filed a complaint against her, and Mrs. Ingram filed a counterclaim.  As stated above, Mrs. Ingram is the only individual that filed formal complaints in this matter.  If there is a complaint from her alleged harasser, it has never been provided to Mrs. Ingram.  Regano also falsely told Ms. Rice that "[f]ollowing the original determination by the superintendent the Ingram's [*sic*] then filed a complaint that this decision was a result of retaliation."  As Mrs. Ingram filed her  February 27th Retaliation Complaint  over two weeks before Defendant Regano issued the March 14th Disposition, Regano knowingly misrepresented the facts underlying the District's coverage claim.  Considering the clear timing of the February 27th Retaliation Complaint being filed over two weeks before the March 14th Disposition was issued, it appears that Regano deliberately misrepresented facts to the District's insurer to obtain insurance coverage for his misconduct and the misconduct of Defendant Bolden.

69.     On May 29, 2018, the Board denied both Mrs. Ingram's appeals of the March 14th Disposition and the April 5th Disposition.

70.     On or around May 30, 2018, Regano made a public statement to the press deliberately misrepresenting the facts of this matter to cover up Defendants' misconduct.  Regano falsely informed the press that he issued the March 14th Disposition before Mrs. Ingram filed the February 27th Retaliation Complaint.

71.     On or about September 26, 2019, Plaintiff received a right to sue letter from the U.S. Equal Employment Opportunity Commission.  (See Exhibit 3).

72.     As of October 31, 2019, Defendants Regano and Bolden have caused the District to spend over $460,000 to cover up Defendants' misconduct.

## FIRST CLAIM FOR RELIEF

## (42 U.S.C. § 1983 FOR VIOLATION OF PROCEDURAL DUE PROCESS)

73.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72 above.

74.     Under the Fourteenth Amendment to the U.S. Constitution, a state actor may not deprive a person of any property interest without due process of law. Any state actor who violates this Fourteenth Amendment right under color of state law is liable under 42 U.S.C. § 1983.

75.     Because Mrs. Ingram had a property interest in her work and assignments at Lewis Elementary, she was entitled to procedural due process before Defendants deprived her of that property interest.

76.     Pursuant to District Policy 3362, Mrs. Ingram had a property interest in receiving (a) a list of the allegations against her; and (b) an opportunity to respond to those allegations.  Mrs. Ingram was entitled to procedural due process before Defendants deprived her of this interest.

77.     While acting individually and in a supervisory capacity as decision makers for the District, and while operating under color of state law, Defendants Regano and Bolden failed to provide Mrs. Ingram with adequate procedural protection before depriving Mrs. Ingram of her property interests in (a) continued employment as a substitute at Lewis Elementary; (b) continued employment assisting with test administration and serving as the backup media specialist at Lewis Elementary; (c) continued service as a Reading Recovery Specialist at Lewis Elementary; (d) continued service as the Parent Workroom Coordinator at Lewis Elementary; and (e) being given a chance to review and respond to any allegations raised against her.

78.     Specifically, Defendants Regano and Bolden stripped Mrs. Ingram of any meaningful ability to defend herself by refusing to provide her with the specific allegations being leveled against her.  Regano and Bolden also refused to allow Mrs. Ingram to defend herself against these allegations when they refused to provide Mrs. Ingram with an opportunity to respond to those allegations.

79.     Plaintiff demanded that she be provided a list of any allegations against her. Plaintiff made this request shortly after Defendants met with her alleged accuser.  Defendants had seven weeks to comply with this request before the March 14th Disposition was issued.  As a result, Defendants Regano and Bolden had both notice and opportunity to provide Mrs. Ingram with procedural due process long before they took away her property interests.   Accordingly, Defendants' failure to provide Mrs. Ingram with procedural due process was both deliberate and willful and exhibits a reckless and callous indifference to Mrs. Ingram's Constitutional rights.

80.     Defendants Regano and Bolden also denied Mrs. Ingram procedural due process regarding the February 27th Retaliation Complaint when they inserted themselves into the investigation process.  It was impossible for Mrs. Ingram to receive an impartial investigation when the respondents in that investigation – Regano and Bolden – supervised the investigation and controlled multiple aspects of the evidence-gathering and decision-making process.

81.     Defendants Regano and Bolden further violated Mrs. Ingram's right to procedural due process by denying her an impartial hearing before the Board.  Regano and Bolden possessed a conflict of interest in deciding the appeals made by Mrs. Ingram to the Board.  By inserting themselves as decision makers after the Board heard Mrs. Ingram's appeals and suggested settlement, Defendants denied Mrs. Ingram an impartial decision-making process.  By doing so, Defendants Regano and Bolden denied Mrs. Ingram procedural due process.

82.     Defendants Regano and Bolden hold positions in which their acts constitute acts of the District.  Defendants deprived Mrs. Ingram of her right to procedural due process and equal protection as a result of Defendants' practice of ignoring the mandatory requirements of the District's Anti-Harassment Policy; Defendants' policy of providing procedural due process to male employees but not female employees; and Defendants' policy of supervising investigations where Defendants are the individuals being investigated.

83.     The failures and actions specified above constitute violations of the Fourteenth Amendment for which Defendants Regano and Bolden are liable under 42 U.S.C. § 1983.

84.     Defendants Regano and Bolden knew, or reasonably should have known, that these failures to provide Mrs. Ingram with adequate procedural protections were violative of her Constitutional rights.

85.     As a direct and proximate result of these violations by Defendants Regano and Bolden, Mrs. Ingram has suffered damages in an amount to be proven at trial.  Under § 1983, Mrs. Ingram is entitled to recover all such general and special damages, attorneys' fees, and costs. Because Defendants Regano and Bolden acted with reckless and/or callous indifference to Mrs. Ingram's Constitutional rights, Defendants Regano and Bolden are also liable for punitive damages in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**(42 U.S.C. § 1983 FOR VIOLATION OF EQUAL PROTECTION)**

86.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-85 above.

87.     Under the Fourteenth Amendment to the U.S. Constitution, no State may deny to any person within its jurisdiction the equal protection of the laws.  Any state actor who violates this Fourteenth Amendment right under color of state law is liable under 42 U.S.C. § 1983.

88.     Equal protection may be invoked under the Fourteenth Amendment where an individual is subject to disparate treatment by a state actor based upon sheer vindictiveness, maliciousness, animosity or spite and for reasons unrelated to any legitimate state interest.

89.     While acting individually and in a supervisory capacity as decision makers for the District, and while operating under color of state law, Defendants Regano and Bolden manipulated the investigative process to retaliate against Mrs. Ingram and fabricate allegations against Mrs. Ingram with the goal of coercing her into giving up her employment and volunteer activities at Lewis Elementary.

90.     Defendants Regano and Bolden further acted in a vindictive and malicious manner by issuing the March 14th Disposition against Mrs. Ingram even though (a) she had never been presented with the specific allegations raised against her in the March 14th Disposition; (b) she never received an opportunity to refute those specific allegations; and (c) the allegations underlying the March 14th Disposition are false.  Defendants engaged in such vindictive conduct to safeguard their own reputations and positions after Mrs. Ingram filed her February 27th Retaliation Complaint.

91.     Upon information and belief, Defendants Regano and Bolden provided Mrs. Ingram's harasser with notice of the allegations against him along with an opportunity to refute those allegations.  By denying that same procedural due process to Mrs. Ingram, Defendants Regano and Bolden "singled out" Mrs. Ingram for disparate treatment.

92.     Regano and Bolden's disparate treatment and "singling out" of Mrs. Ingram was intentional, malicious, and devoid of legitimate state interest.

93.     Defendants Regano and Bolden hold positions in which their acts constitute acts of the District. Defendants deprived Mrs. Ingram of her right to procedural due process and equal

protection as a result of Defendants' practice of ignoring the mandatory requirements of the District's Anti-Harassment Policy; Defendants' policy of providing procedural due process to male employees but not female employees; Defendants' policy of not investigating allegations of harassment by raised by female employees against male employees; and Defendants' policy of advising female complainants to "be professionals" and "assuage the egos" of their male harassers.

94.     The actions delineated above constitute violations of the Fourteenth Amendment for which Regano and Bolden are liable under 42 U.S.C. § 1983.

95.     Defendants Regano and Bolden knew or reasonably should have known that such vindictive disparate treatment of Mrs. Ingram for reasons unrelated to any legitimate state objective was violative of Mrs. Ingram's Constitutional rights.

96.     As a direct and proximate result of these violations by Defendants Regano and Bolden, Mrs. Ingram has suffered damages in an amount to be proven at trial. Under § 1983, Mrs. Ingram is entitled to recover all such general and special damages, attorneys' fees, and costs. Because Defendants Regano and Bolden acted with reckless and/or callous indifference to Mrs. Ingram's Constitutional rights, Defendants Regano and Bolden are also liable for punitive damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### (SEX DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964)

97.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-96 above.

98.     At all times relevant, Plaintiff was a female, and Defendants were aware of that fact.

99.     At all times relevant, Plaintiff's harasser, of whom she complained in December 2017, was a male, and Defendants were aware of that fact,

100.    Upon information and belief, Defendants Regano and Bolden provided Mrs. Ingram's male harasser with notice of the allegations against him along with an opportunity to refute those allegations.  At all times relevant, Defendants provided Mrs. Ingram's male harasser with procedural due process.

101.    Defendants Regano and Bolden deliberately and willfully denied Mrs. Ingram notice of the allegations against her and denied her an opportunity to refute those allegations. Defendants Regano and Bolden also acted in a willful and deliberate manner to deny Mrs. Ingram an impartial hearing on both her February 27th Retaliation Complaint and her subsequent appeals to the Board.  At all times relevant, Defendants denied Mrs. Ingram procedural due process.

102.    Plaintiff was well qualified for her positions at Lewis Elementary and met all reasonable expectations for continued employment.

103.     By providing procedural due process to her male harasser and denying such procedural due process to Mrs. Ingram, Defendants Regano and Bolden discriminated against Mrs. Ingram based on her sex.

104.    Plaintiff was targeted for removal from her positions at Lewis Elementary based on her sex.

105.    Plaintiff was improperly investigated and ultimately improperly disciplined.

106.    Upon information and belief, Defendants' actions were part of a pattern and/or practice of discrimination on the basis of sex, and Plaintiff was not the only person targeted for improper treatment by Defendants.

107.    Defendants' conduct constitutes sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq.*

108.     As a result of Defendants' unlawful sex-related discrimination and retaliation, Plaintiff has suffered damages in an amount to be determined at trial.

109.     Such violations as described above were willful, entitling Plaintiff to exemplary damages.

## FOURTH CLAIM FOR RELIEF

## (SEX DISCRIMINATION AND RETALIATION UNDER OHIO REV. CODE § 4112.02)

110.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-109 above.

111.     At all times relevant, Plaintiff was a female, and Defendants were aware of that fact.

112.     At all times relevant, Plaintiff's harasser, of whom she complained in December 2017, was a male, and Defendants were aware of that fact,

113.     Upon information and belief, Defendants Regano and Bolden provided Mrs. Ingram's male harasser with notice of the allegations against him along with an opportunity to refute those allegations.  At all times relevant, Defendants provided Mrs. Ingram's male harasser with procedural due process.

114.     Defendants Regano and Bolden deliberately and willfully denied Mrs. Ingram notice of the allegations against her and denied her an opportunity to refute those allegations. Defendants Regano and Bolden also acted in a willful and deliberate manner to deny Mrs. Ingram an impartial hearing on both her February 27th Retaliation Complaint and her subsequent appeals to the Board.  At all times relevant, Defendants denied Mrs. Ingram procedural due process.

115.     Defendants Regano and Bolden retaliated against Plaintiff by allowing her to lose her property interest in her employment and volunteer activities at Lewis Elementary the day after she reported sexual harassment and a hostile work environment.

116.   Defendants further retaliated against Plaintiff by issuing the March 14th Disposition against her without procedural due process.  Defendants denied Plaintiff procedural due process to retaliate against her for filing her February 27th Retaliation Complaint.

117.   Plaintiff was well qualified for her positions at Lewis Elementary and met all reasonable expectations for continued employment.

118.   By providing procedural due process to her male harasser and denying such procedural due process to Mrs. Ingram, Defendants Regano and Bolden discriminated against Mrs. Ingram based on her sex.

119.   Plaintiff was targeted for removal from her positions at Lewis Elementary based on her sex.

120.   Plaintiff was improperly investigated and ultimately improperly disciplined.

121.   Upon information and belief, Defendants' actions were part of a pattern and/or practice of discrimination on the basis of sex, and Plaintiff was not the only person targeted for improper treatment by Defendants.

122.   Defendants' conduct constitutes sex discrimination pursuant to Ohio Rev. Code § 4112.02.

123.   As a result of Defendants' unlawful sex-related discrimination and retaliation, Plaintiff has suffered damages in an amount to be determined at trial.

124.   Such violations as described above were willful, entitling Plaintiff to exemplary damages, injunctive relief, or such other appropriate relief.

## FIFTH CLAIM FOR RELIEF
### (BREACH OF FIDUCIARY DUTY)

125.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-124 above.

126.     Defendant Regano served as a Board-appointed District Compliance Officer.  As a result of the relationship of trust inherent in his position as District Compliance Officer, Defendant Regano owed a fiduciary duty to Mrs. Ingram that he would conduct his investigation in a fair and unbiased manner.

127.     Defendant Regano breached his fiduciary duty to Mrs. Ingram by conducting a biased, unfair, and predetermined investigation, and by denying Mrs. Ingram procedural due process during that investigation.

128.     Pursuant to Ohio Revised Code Section 102.02, Defendant Regano is subject to Ohio Ethics law based on his role as District Superintendent.  Through this position, Defendant Regano owed Mrs. Ingram a fiduciary duty to behave in an ethical manner.

129.     Pursuant to Ohio Revised Code Section 102.02, Defendant Bolden is subject to Ohio Ethics law based on his role as District Business Manager.  Through this position, Defendant Bolden owed Mrs. Ingram a fiduciary duty to behave in an ethical manner.

130.     Under Ohio Ethics law, Defendants Regano and Bolden must abstain completely from any involvement where there might be a conflict of interest:

> "When someone in public service is confronted with a conflict of interest, he or she must completely abstain from making decisions about or influencing how the matter is resolved.
>
> Such abstention or recusal should include refraining from:
> * Voting
> * Discussing
> * Reviewing
> * Recommending
> * Inspecting
> * Investigating
> * Or taking any other action on the matter"
>
> *See https://ethics.ohio.gov/education/coi.html*

131.    By directing Defendant Bolden to "take care of" the investigation into Defendants' misconduct as set forth in Mrs. Ingram's February 27th Retaliation Complaint, Defendant Regano breached his fiduciary duty to Mrs. Ingram.

132.    Defendant Bolden engaged in the following activities during the investigation into Defendants' misconduct as set forth in Mrs. Ingram's February 27th Retaliation Complaint:

A.  Discussed the investigation with the investigator throughout the duration of the investigation;
B.  Scheduled witness interviews;
C.  Directly contacted witnesses;
D.  Discussed Mrs. Ingram's involvement in the investigation with certain witnesses;
E.  Pulled emails from the server and decided what emails should be given to the investigator;
F.  Coordinated the gathering of exhibits;
G.  Personally handled the review and redaction of key video and emails;
H.  Directed the investigator what to do with her investigation report after consulting with his boss, Defendant Regano, who was also a respondent in the investigation of Plaintiff's February 27th Retaliation Complaint; and
I.  Instructed the District's compliance officer on what to do with the investigation report.

133.    By engaging in the above activities during the investigation into Defendants' misconduct as set forth in Mrs. Ingram's February 27th Retaliation Complaint, Defendant Bolden breached his fiduciary duty to Mrs. Ingram.

134.    Defendants actions were malicious, willful, and intentional.

135.    As a result of Defendants' actions, Plaintiff has been damaged in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### (CIVIL CONSPIRACY)

136.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-135 above.

137.    Through the conduct described above, Defendants have combined together in a malicious manner to cause injury to Plaintiff's property interests in her employment and volunteer activities at Lewis Elementary and to deny her procedural due process.  Defendants have thus acted together in a malicious way to carry out an unlawful act independent of the conspiracy itself.

138.    Specifically, Defendants combined together to deliberately and willfully ignore Mrs. Ingram's requests for procedural due process so that Defendants could issue the March 14th Disposition and retaliate against Mrs. Ingram for filing her December 14, 2017 complaint of harassment and her February 27th Retaliation Complaint.  In doing so, Defendants conspired to act maliciously and unlawfully towards Mrs. Ingram.

139.    Defendants also combined together in a malicious manner to deny Mrs. Ingram an impartial hearing of her February 27th Retaliation Complaint by inserting themselves into the investigation process.  Specifically, Defendant Regano told Defendant Bolden to "take care" of the investigation, and Defendant Bolden said he would "handle" it.  Bolden did so by engaging in multiple activities as described herein.

140.    Defendants further conspired in a malicious manner against Mrs. Ingram by inserting themselves in place of the Board during the adjudication process of Mrs. Ingram's appeals before the Board.

141.    Defendants' actions were designed to cause willful and malicious injury to Plaintiff.

142.    All of the individuals named above in their individual capacities acted maliciously, willfully, and intentionally.

143.     As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff Meribethe R. Ingram respectfully requests this Court enter judgment in her favor and against Defendants Regano and Bolden as follows:

A.     Award Plaintiff judgment on all of her claims.

B.     Award Plaintiff damages in an amount to be proven at trial, along with exemplary and punitive damages.

C.     Award Plaintiff her reasonable expenses, including costs and attorneys' fees in prosecuting this action; and,

D.     Award Plaintiff such further legal and/or equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.


Respectfully submitted,

*/s/* Kasey T. Ingram
Kasey T. Ingram (0075234)
kaseyingram@msn.com
32105 Burlwood Dr.
Solon, Ohio 44139
Phone:  (440) 719-9876

*Attorney for Plaintiff*