# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **MERIBETHE R. INGRAM,** | ) | **CASE NO.1:19CV2926** |
| | ) | |
| **Plaintiff,** | ) | **SENIOR JUDGE** |
| | ) | **CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **JOSEPH V. REGANO** | ) | **ORDER** |
| | ) | |
| **Defendant.** | ) | |

## CHRISTOPHER A. BOYKO, SR. J:

This matter is before the Court on Defendants' Joseph V. Regano and Fred E. Bolden, II Joint Motion for Judgment on the Pleadings.  (ECF # 9).   For the following reasons, the Court grants, in part, and denies, in part, Defendants' Motion.

Plaintiff Meribethe R. Ingram, ("Ingram") brings this suit against Defendants Joseph V. Regano ("Regano")[1] and Fred E. Bolden, II ("Bolden") in their official and personal capacities for violations of her Procedural Due Process and Equal Protection rights guaranteed by the United States Constitution.  Ingram alleges Defendants deprived her of her property interest in her substitute teaching and other specialist positions at Lewis Elementary School in Solon, Ohio. She further alleges Sexual Discrimination claims in violation of Title VII of the United States

---

[1] In a subsequent filing, the parties informed the Court Regano is deceased and there is a pending Amended Motion to Substitute Party.

Code and Ohio law and Unlawful Retaliation in violation of Ohio law.   In addition, Ingram

alleges Breach of Fiduciary Duty and Civil Conspiracy claims in violation of Ohio law.

**FACTUAL BACKGROUND**

According to her Complaint, Ingram alleges she worked and volunteered  in various

capacities at Lewis Elementary, the school her children attended, as a Substitute Teacher,

Reading Recovery and Back Up Media Specialist, Testing Assistant and Parent Workroom

Coordinator.  Beginning in October 2017, Ingram alleges she was harassed by a teacher at Lewis

and reported it to the Lewis Administrators but nothing was done about it.  In December 2017,

Regano, a District Superintendent and Compliance Officer, was made aware of Ingram's

harassment complaint.  Instead of investigating her complaint, Ingram was informed she was no

longer welcome on the Lewis Elementary premises.  According to Ingram, this action was

retaliatory and violated the District's anti-harassment policy.

Ingram subsequently pressed the issue and an investigation was finally commenced but

the retaliation against Ingram continued.  In January of 2018, Regano and Bolden met with both

Ingram and her alleged harasser in the course of their investigation.  When asked that she be put

back on the substitute teacher list, Ingram was informed she could not be returned to the list

because she was under investigation.  It was the first time Ingram was told there was an ongoing

investigation of her.  Ingram was never provided any written complaint against her.  Thus, she

contends she was denied certain protections offered by the District's anti-harassment policy,

including:  a written complaint outlining the allegations against her; an opportunity to respond to

the allegations and an impartial hearing before the District's Authorities took away her substitute

teaching opportunities.

2

In February 2018, Ingram filed a written complaint for unlawful retaliation with both Bolden and Regano as respondents.  The District, however, allowed Bolden and Regano to oversee the investigation even though both were the subject of the investigation.  In March 2018, after learning he was the subject of Ingram's retaliation complaint, Regano issued a determination that Ingram harassed her alleged harasser and stripped her of her substitute teaching employment and assistant and volunteer opportunities at Lewis Elementary.   Ingram's retaliation complaint was denied in April 2018.

Ingram appealed the finding that she had harassed a teacher at Lewis and appealed the denial of her retaliation complaint.  Her appeals were heard by the Solon City Schools District Board of Education.  In May 2018, the Board denied both Ingram's appeals.  In September of 2018, Ingram received her Right to Sue from the EEOC and subsequently filed this action.

**Defendants' Motion**

Defendants move for judgment on all Ingram's claims, contending she cannot show she has a constitutionally protected property interest in her at-will employment with Solon schools that would entitle her to Due Process under the United States Constitution or the District's policies or procedures.  Neither can she show a violation of her Equal Protection rights as she is a class-of-one and has not alleged discriminatory animus based on race or gender.  Moreover, the Defendant Administrators are entitled to qualified immunity.  She also fails to allege an adverse employment action as she was only barred from volunteering or substitute teaching at one school.  She was not barred District-wide.  She also fails to plead she was treated differently than a similarly-situated employee as her comparator is a school teacher, not a volunteer or substitute teacher.

3

Finally, her Civil Conspiracy claim fails because individual employees of the same employer are not considered separate individuals for a conspiracy claim nor has Ingram pled an unlawful act.

**Ingram's Opposition**

According to Ingram, Defendants' Motion must fail as she has adequately plead a Due Process violation.  She alleges she had multiple implied agreements for a number of positions, including Testing Assistant and Backup Media Specialist; and therefore, she can show a property interest protected by Due Process.  Defendants fail to address Plaintiff's paid positions in their Motion despite the Complaint specifically describing her property interest.  Ingram claims she had a protected property interest in working at Lewis Elementary School as a result of an implied agreement with Michael Acomb, the Principal at Lewis.

In addition, Ingram alleges the Solon School District's anti-harassment policy 3362 is not limited to full-time teachers but governs all employees and volunteers, including substitute teachers.  Also, classroom volunteers must be members of the PTA, which requires a fee to join.  Thus, Ingram paid for the privilege of volunteering as a Parent Workroom Coordinator and as such, has a property interest in the position.  Moreover, Defendants' Motion never raises the issue of Ingram's work as a Reading Recovery Specialist.

Due to the allegations against Ingram that she was a harasser and because of the potential damage to her reputation resulting from such accusations, Ingram was entitled to Due Process under the law as she has a liberty interest in her reputation.

Ingram further alleges she made a straightforward allegation that Defendants treated male employees more favorably than female employees and that such allegation sufficiently alleges an

4

Equal Protection violation.

Regarding her Sex Discrimination and Retaliation claims, Ingram asserts she has alleged an adverse employment action, including loss of compensation; and has alleged temporal proximity in engaging in a protected activity-i.e. complaining of harassment- and losing her positions the next day as Testing Assistant, Backup Media Specialist, Reading Recovery Specialist and Parent Work Room Coordinator at Lewis.  Both her positions as Backup Media Specialist and Testing Assistant were paid positions, thus showing an adverse employment action.  Furthermore, she was not offered these positions at other Solon Schools.  She further alleges she has shown that her harasser was treated more favorably as he received due process and she did not.  Although he was a full-time teacher and she was a substitute, she has alleged they were similarly situated in all relevant respects, satisfying her obligation at the pleading stage to show discrimination and retaliation.

By assuming the role of a third-party neutrals adjudicating the competing harassment claims, Ingram alleges she has shown that Defendants owed her a fiduciary duty and breached that duty by denying her due process.

Ingram alleges she has adequately pled Civil Conspiracy as the intracorporate conspiracy doctrine does not apply when the actors acted outside the scope of their employment.  According to Ingram, by acting in their own personal interest, Defendants acted outside the scope of their employment and therefore, cannot avail themselves of this defense.

Lastly, Ingram says she has adequately pled official capacity Title VII claims which have gone uncontested by Defendants and has plead Sex Discrimination under Ohio law against Defendants in their individual capacities as they aided or abetted discrimination and/or directly

or indirectly attempted to discriminate against her.  She alleges Defendants are not entitled to statutory immunity under Ohio law as they acted in bad faith and outside the scope of their employment.

**Defendants' response**

Defendants reply that, regardless of her various position titles, Ingram has no property interest in any of them and they are entitled to judgment as a matter of law on her Due Process claim.  Defendants argue that where a formal advancement scheme exists like that under Ohio statute, implied contracts and unilateral understandings are insufficient to confer a property interest in a substitute teaching or volunteer position.  Advancement from substitute to full-time teacher is governed by Ohio statute.  Furthermore, in Ohio substitute teachers are at-will employees by law.  Therefore, Ingram cannot show a property interest in her substitute teaching position or volunteer activities.

Defendants also contend that Ingram cannot assert for the first time in her Opposition Brief a claim of a liberty interest that entitles her to Due Process.  Ingram has not pled such a claim in her Complaint, therefore, she is prohibited from doing so in opposing Defendants' Motion.  Nor has she alleged in her Complaint that the purported injury to her reputation prevented her from working at other Solon Schools.  To the contrary, Defendants expressly permitted her to work at other Solon schools.

Judgment for Defendants is further required because Ingram fails to assert the purportedly flawed investigation was tainted by unlawful gender discrimination.  Instead, Defendants allege she merely asserts disparate treatment, which is insufficient to support her Equal Protection claim without any allegation of discriminatory gender-based animus.

6

Moreover, Ingram fails to plead a similarly situated comparator was treated differently. Her comparator is a full-time teacher who, under Ohio law and per his status as a contracted for employee, cannot be similarly situated to Ingram who, as a substitute teacher and volunteer, is not entitled to the same due process. Also, it is fatal to her discrimination claim that her comparator was not alleged to have engaged in the same misconduct.

Ingram's claims for Sex Discrimination and Retaliation are further flawed as she has not sufficiently pled an adverse employment action nor has she plead that she engaged in a protected activity.

Ingram's Breach of Fiduciary Duty claim suffers from a fatal flaw in that she cannot show the Administrators owed her any fiduciary duty to conduct an investigation for her benefit. And her claims that the Administrators acted outside the scope of their employment also suffers from the fatal lack of facts to support this conclusory allegation. Therefore, they are entitled to statutory immunity on Ingram's state law claims

## LAW AND ANALYSIS

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is governed by the same legal standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. *Almendares v. Palmer,* 284 F.Supp.2d 799, 802 (N.D. Ohio 2003). Therefore, as with a motion to dismiss, the Court must test the sufficiency of the complaint and determine whether "accepting the allegations in the complaint as true and construing them liberally in favor of the plaintiff, the complaint fails to allege 'enough facts to state a claim for relief that is plausible on its face.' " *Ashmus v. Bay Vill.*

7

*Sch. Dist. Bd. of Educ.,* 2007 WL 2446740, 2007 U.S. Dist. LEXIS 62208 (N.D. Ohio 2007),

quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929

(2007).  Claims alleged in the complaint must be "plausible," not merely "conceivable."  *Id.*

Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim

raised.  *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).  A Rule 12(c) motion "is

granted when no material issue of fact exists and the party making the motion is entitled to

judgment as a matter of law."  *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233,

1235 (6th Cir. 1991) (emphasis added).

A written instrument attached to a pleading is a part of the pleading for all purposes. Fed.

R. Civ. P. 10(c).  "In addition, when a document is referred to in the pleadings and is integral to

the claims, it may be considered without converting a motion to dismiss into one for summary

judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th

Cir. 2007).

"To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must allege

two elements: (1) the defendant acted under color of state law; and (2) the defendant's conduct

deprived the plaintiff of rights secured under federal law."  *Fritz v. Charter Twp. of Comstock,*

592 F.3d 718, 722 (6th Cir. 2010).  Plaintiff alleges two Constitutional Violations; a procedural

Due Process violation and violation of her Equal Protection rights, both under the Fourteenth

Amendment.  The Court will consider these below.

**<u>Due Process</u>**

To be successful in a procedural due process claim, Plaintiff must show that she:  1) "had

a life, liberty, or property interest protected by the Due Process Clause, 2) was deprived of the

protected interest and (3) the state 'did not afford her adequate procedural rights." *Daily Servs., LLC v. Valentino,* 756 F.3d 893, 904 (6th Cir. 2014) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)).  The Supreme Court has established that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976).  "Procedural due process generally requires that the [government] provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005).

Ingram's Complaint alleges solely a property interest in her work and volunteer positions and fails to mention any liberty interest.  See Complaint ¶ 75.  "Because Mrs. Ingram had a property interest in her work and assignments at Lewis Elementary, she was entitled  to procedural  due  process  before  Defendants  deprived her  of  that  property  interest."   See also ¶ 76.  "Pursuant to District Policy 3362, Mrs. Ingram had a property interest in: receiving (a) a list of the allegations against her; and (b) an opportunity to respond to those allegations."  And ¶77. "Defendants Regano and Bolden failed to provide Mrs. Ingram with  adequate procedural  protection  before  depriving  Mrs.  Ingram  of her property interests in (a) continued employment as a substitute at Lewis Elementary; (b) continued employment assisting with test administration and serving as the backup media specialist at Lewis Elementary;  (c) continued service  as  a  Reading  Recovery  Specialist  at  Lewis  Elementary; (d) continued  service  as the Parent Workroom Coordinator at  Lewis  Elementary;  and  (e) being given a chance to review and respond to any allegations raised against her."

In her Brief in Opposition, Ingram, for the first time, alleges a liberty interest in her reputation, but this interest was never pled in her Complaint.  "If plaintiffs believe that they need to supplement their complaint with additional facts to withstand a motion for judgment on the pleadings (or a motion to dismiss), they have a readily available tool: a motion to amend the complaint under Rule 15.  Plaintiffs cannot, by contrast, amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020).  Therefore, the Court finds Ingram failed to assert in her Complaint any liberty interest and the Court will proceed to analyze her Due Process claim as asserting a property interest only.

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  For a public employee to be successful in his due process violation claim, he must "establish that he had a protectable property interest in his position." *Kuhn v. Washtenaw Cnty*., 709 F.3d 612, 620 (6th Cir. 2013) (citing *Miller v. Admin. Office of the Courts,* 448 F.3d 887, 895 (6th Cir. 2013).  Further, a public employee must prove a "legitimate expectation of continued employment" by reference to state law in order to establish a constitutionally protected property interest in his or her employment position.  *Waters* v. Drake, 105 F.Supp.3d 780, 790 (S.D. Ohio 2015), quoting *Roth*, 408 U.S. at 577; see also *Bishop v. Wood,* 426 U.S. 341, 344–45, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).  The Sixth Circuit has held that an at-will employee does not have a property interest in his employment that is protected by the Due Process Clause.  *Bailey v. Floyd*

*Cnty. Bd. of Educ. By & Through Towler*, 106 F.3d 135, 141 (6th Cir. 1991); see also

*Chilingirian v. Boris,* 882 F.2d 200, 204 (6th Cir. 1989); *Vogel v. City of Medina*, No.

1:17CV272, 2018 WL 637465, at *2 (N.D. Ohio Jan. 31, 2018).

Although property rights are principally created by state law, "whether a substantive

interest created by the state rises to the level of a constitutionally protected property interest is a

question of federal constitutional law." *Whaley v. County of Tuscola,* 58 F.3d 1111, 1114 (6th

Cir.1995).  "Property interests protected by the due process clause must be more than abstract

desires or attractions to a benefit.  The due process clause only protects those interests to which

one has a legitimate claim of entitlement." *Brotherton v. Cleveland,* 923 F.2d 477, 480 (6th

Cir.1991); *Waeschle v. Dragovic,* 576 F.3d 539, 544–45 (6th Cir. 2009)

Under Ohio law, O.R.C. § 3319.10, substitute teachers have no property interest in their

continued employment:

> Teachers may be employed as substitute teachers for terms not to exceed one year
> for assignment as services are needed to take the place of regular teachers absent
> on account of illness or on leaves of absence or to fill temporarily positions
> created by emergencies; such assignment to be subject to termination when such
> services are no longer needed.
> * * *
> Teachers employed as substitutes on a casual or day-to-day basis shall not be
> entitled to the notice of non-reemployment prescribed in section 3319.11 of the
> Revised Code....

See also *Lautermilch v. Findlay City Sch.*, 314 F.3d 271, 274–75 (6th Cir. 2003).

However, a contract for employment may confer a protectable property interest.  *Id.*

"[C]onstitutionally protected property interests can be created by either explicit or implied

contractual terms ..."[e]xplicit contractual provisions may be supplemented by other agreements

implied from 'the promisor's words and conduct in light of the surrounding circumstances.' "

*Ramsey v. Bd. of Educ. of Whitley Cty., Ky.,* 844 F.2d 1268, 1271–72 (6th Cir. 1988) quoting *Perry v. Sinderman,* 408 U.S. 593, 602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Here, because Ingram alleges she was a substitute teacher and Ohio law expressly holds substitute teachers do not possess a property interest in their positions, Ingram cannot show a property interest in her substitute teaching position. In her Opposition Brief, she asserts the argument that based on understandings or requirements placed on her substitute teaching, including that she would only substitute teach at Lewis Elementary, a contract was created and along with it, a protected property interest in her position. However, this position by contract is also never alleged in her Complaint nor has she alleged any facts in her Complaint sufficient to raise a plausible property interest by contract claim.

Therefore, Defendants are entitled to judgment on her Due Process claim as Ingram has not alleged a property interest in her employment and her implied contract claim cannot be raised for the first time in an Opposition Brief. See *Springs v. U.S. Dep't of Treasury,* 567 F. App'x 438, 448 (6th Cir. 2014) (" Because Springs does not allege any contractual right to continued employment, she was presumably an at-will employee who lacked a protected property interest in her continued employment at Ally.").

Insofar as Ingram alleges a property interest in the school's anti-harassment process, a "person cannot have a property interest in a procedure itself." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 832 (6th Cir. 2009) *citing Richardson v. Twp. of Brady*, 218 F.3d 508, 518 (6th Cir.2000). Therefore, Ingram cannot allege a property interest in the process itself.

Courts, including those in Ohio, have found that volunteers do not possess a property interest in their volunteer positions. See *Neal v. Treglia*, 2019-Ohio-3609, ¶ 21, 144 N.E.3d

12

1045, 1054. ("Generally speaking, volunteers do not have property interests in their positions, and thus do not have a constitutional right to due process.") citing *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3rd Cir.1993); *Hyland v. Wonder,* 117 F.3d 405, 412 (9th Cir.1997); and *Hale v. Bexar County, Tex.*, 2009 WL 2222833 (5th Cir. July 27, 2009). See also, *Baker v. McDaniel*, No. CIV.A. 07-379-KSF, 2009 WL 2710099, at *4 (E.D. Ky. Aug. 24, 2009). Consequently, Ingram has failed to allege a plausible claim of a protected property interest in her volunteer positions which could support any claim for Due Process violation.

For the foregoing reasons, the Court grants Defendants' Motion on Ingram's Due Process claim.

**Equal Protection and Title VII Discrimination**

According to her Complaint, Ingram alleges "Defendants deprived Mrs. Ingram of her right to procedural due process and equal protection as a result of Defendants' practice of ignoring the mandatory requirements of the District's Anti-Harassment Policy; Defendants' policy of providing procedural due process to male employees but not female employees; Defendants' policy of not investigating allegations of harassment raised by female employees against male employees; and Defendants' policy of advising female complainants to "be professionals" and "assuage the egos" of their male harassers." (Complaint ¶ 94).

The Equal Protection Clause provides that "[n]o state shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To assert a valid Equal Protection claim, a plaintiff "must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect

13

class, or has no rational basis.' " *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).  "Such a claim is potentially actionable in the public-employment context." See *Deleon v. Kalamazoo Cnty. Rd. Comm'n,* 739 F.3d 914, 917-18 (6th Cir. 2014) (concluding that the elements necessary to establish an equal protection claim under 42 U.S.C. § 1983, and to establish a violation of Title VII, are "the same").

However, as an initial matter, Ingram does not allege a class-of-one Equal Protection claim since she alleges Defendants treated female employees differently than male employees, affording them less protections under the District's anti-harassment policy than males.  See Complaint ¶93:

> Defendants deprived Mrs. Ingram of her right to procedural due process and equal protection as a result of Defendants' practice of ignoring the mandatory requirements of the District's Anti-Harassment Policy; Defendants' policy of providing procedural due process to male employees but not female employees; Defendants' policy of not investigating allegations of harassment raised by female employees against male employees; and Defendants' policy of advising female complainants to "be professionals" and "assuage the egos" of their male harassers.

This allegation is sufficient at this stage of the proceedings to survive a motion for judgment on the pleadings as it plausibly alleges a disparate treatment Equal Protection claim.

Defendants allege they are entitled to Qualified Immunity on Ingram's § 1983 claims because she has not alleged a violation of a constitutional right.  While the Court agrees Plaintiff has not alleged a due process property right in her employment, she has alleged a suspect class Equal Protection claim based on her sex.  However, Defendants contend that Ingram's failure to adequately plead an adverse employment action or a similarly-situated comparator defeats both her Equal Protection and Title VII claims.  Therefore, the Court will proceed with its anlaysis under Title VII.

14

## Sex Discrimination

In her Sex Discrimination claim, Ingram alleges:  By providing procedural due process to her male harasser and denying such procedural due process to Mrs. Ingram, Defendants Regano and Bolden discriminated against Mrs. Ingram based on her sex.   Plaintiff was targeted for removal from her positions at Lewis Elementary based on her sex.   Plaintiff was improperly investigated and ultimately improperly disciplined.  (Complaint ¶ 103-105).

Title VII provides that an employer may not "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Where a plaintiff relies on circumstantial evidence to prove her claim, the Sixth Circuit applies the burden-shifting framework from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  "Under this framework, the plaintiff must first make out a prima facie case of discrimination, which requires the plaintiff to show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably." *Stewart v. Esper,* 815 F. App'x 8, 16 (6th Cir. 2020) citing *Jackson v. VHS Detroit Receiving Hosp., Inc.,* 814 F.3d 769, 776 (6th Cir. 2016).

An adverse employment action is a "materially adverse change in the terms or conditions of ... employment because of [the] employer's conduct."  *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (quoting *Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir. 1996)).  An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).  Other material adverse actions such as "a less distinguished title, diminished options for advancement, or other unique indices" can constitute adverse employment actions.  *Freeman v. Potter*, 200 F. App'x 439, 442 (6th Cir. 2006).  "But not every act affecting an individual's employment constitutes a materially adverse change."  *Stewart*, 815 F.App'x. at 17 citing *McMillian v. Potter,* 130 F. App'x 793, 796 (6th Cir. 2005).  "Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions."  *Policastro v. Nw. Airlines, Inc.,* 297 F.3d 535, 539 (6th Cir. 2002).  "Whether something constitutes an adverse employment action is viewed objectively, and the question is whether the employment action was 'objectively intolerable to a reasonable person.'"  *Stewart,* 815 App'x. at 17 *quoting Policastro,* 297 F.3d at 539.

According to Defendants, Ingram's Sex Discrimination claim against them in their individual capacities must fail as the law prohibits such individual liability.  Furthermore, her Sex Discrimination claims against them in their official capacities also fails because she has not sufficiently alleged an adverse employment action or described a similarly situated comparator.  Her reassignment outside Lewis Elementary without loss of pay cannot serve as an adverse action and her male comparator was a full-time teacher and not a substitute nor a volunteer.  As such, he was entitled to more due process under Ohio law than she was.  Thus, he was not similarly situated to her in all relevant respects such that she can meet the pleading requirements of a Sex Discrimination claim.

Ingram alleges she has sufficiently pled discrimination claims under Ohio and federal law as she pled she lost her ability to work at Lewis elementary and lost her employment, including

paid work as a Backup Media Specialist and Testing Assistant.  She further disputes that she was reassigned to work at another school.  These create issues of fact permitting her claims to proceed.  See *Wasek v. Arrow Energy Servs., Inc.,* 682 F.3d 463, 470 (6th Cir. 2012) *Barton v. Zimmer*, 662 F.3d 448, 454 (7th Cir.2011) (noting that adverse employment actions include transfers that reduce future career prospects).

Ingram further contends that regardless of whether her comparator was a full-time teacher, both teachers and substitute teachers are afforded the same protections under the Solon District Policy 3362.  Thus, for purposes of her Sex Discrimination claim she need only show she and her comparator were similarly situated in all relevant respects.

The Court holds that Defendants cannot be held liable in their individual capacities for unlawful Sex Discrimination.  Under Title VII, the Sixth Circuit has explained that "the statute as a whole, the legislative history and the case law support the conclusion that Congress did not intend individuals to face liability under the definition of 'employer."  *Delozier v. Bradley Cty. Bd. of Educ.,* 44 F. Supp. 3d 748, 766 (E.D. Tenn. 2014) quoting *Wathen v. Gen. Elec. Co.,* 115 F.3d 400, 405–06 (6th Cir.1997) (noting that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII").

However, concerning their official capacities, Ingram need not plead all the elements of a prima facie Sex Discrimination claim at the pleading stage.  "Importantly, the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973), modified by *Hazen Paper Co. v. Biggins,* 507 U.S. 604 (1993), is inapplicable on a Rule 12(b)(6) motion to dismiss.  That is to say, a plaintiff need not allege facts specifically indicating that the plaintiff could carry the burden she might ultimately bear under *McDonnell Douglas*. This is

17

because *McDonnell Douglas* 'is an evidentiary standard, not a pleading requirement.'"  *Holland v. LG Elecs. U.S.A., Inc.,* No. 3:20-CV-00706, 2021 WL 130529, at *2 (M.D. Tenn. Jan. 14, 2021) quoting *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 510 (2002).

A review of the Complaint reveals that Ingram has sufficiently alleged a Sex Discrimination claim under federal and Ohio law.  Defendants challenge her adverse employment action and similarly situated comparator; but at this stage, the Court takes her allegations as true.  According to her Complaint, she lost her employment as a result of Defendants' discrimination.  Loss of employment is an adverse employment action as is reassignment with material differences in job duties.  At the pleading stage, these allegations are sufficient to support her Sex Discrimination claim.

Furthermore, her allegation that she was similarly situated to her alleged harasser who was male and was afforded the full process due under the District's Policy 3362 while she was not, resulting in only her being disciplined, at this stage of the proceedings, is also sufficient to support her discrimination claim.  As stated above, Plaintiff at the pleading stage is not required to plead the elements of a prima facie claim of discrimination.  Here, she has alleged she was treated differently than a male coworker for the same conduct, even though the District Policy on harassment required the Defendants to  afford them the same process, resulting in her loss of employment and pay.  At the pleading stage this is sufficient.  Ingram's allegations will ultimately be put to the evidentiary test of the *McDonnell/Burdine* paradigm.  For now, however, her Sex Discrimination claims under federal and Ohio law survive.

**Retaliation**

In her Complaint, Ingram alleges she suffered loss of her employment the day after she

18

complained of harassment and a hostile work environment. She was further retaliated against when Defendants failed to provide her due process before issuing their disposition against her. "For retaliation claims in Ohio, Federal law provides the applicable analysis for reviewing retaliation claims." *Baker v. Buschman Co.,* 127 Ohio App.3d 561, 568, 713 N.E.2d 487 (Ohio Ct.App. 12th Dist.1998) (internal citation omitted). "As such, the same burden shifting analysis that governs the Court's consideration of retaliation claims under Title VII applies to retaliation claims under Ohio Rev. Code § 4112." *McBroom v. Barnes & Noble Booksellers, Inc.,* 747 F. Supp. 2d 906, 913 (N.D. Ohio 2010)

Title VII's anti-retaliation provision "protects employees from conduct that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Hawkins v. Anheuser-Busch, Inc.,* 517 F.3d 321, 345 (6th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)). Absent direct evidence of retaliation the prima facie elements of a retaliation claim are that: (1) plaintiff engaged in protected activity under Title VII; (2) the exercise of her protected rights was known by Defendants; (3) as a result, Defendants took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the adverse action. *Sizemore v. Edgewood Bd. of Educ.,* No. 1:19-CV-555, 2020 WL 1904726, at *5 (S.D. Ohio Apr. 17, 2020) citing *Barrow v. City of Cleveland,* 773 F. App'x 254, 261 (6th Cir. 2019).

In considering these elements, "there is little question that reporting alleged sexual misconduct in the workplace is a protected activity under Title VII." *Sizemore*, No. 1:19-CV-555, 2020 WL 1904726, at *6.

Defendants do not directly move on Plaintiff's Retaliation claim and do not discuss the

19

elements of a Retaliation claim in their Motion. However, insofar as their Motion relies upon Ingram's failure to allege an adverse employment action, the Court has already determined she has alleged loss of employment and reassignment, both of which are sufficient to support a Retaliation claim. Therefore, the Retaliation claim survives dismissal.

**Breach of Fiduciary Duty**

According to Ingram's Complaint, in his role as District Compliance Officer, Regano owed Ingram a fiduciary duty to conduct the investigation in a fair and unbiased manner. Furthermore, Regano was bound by Ohio ethics rules and his failure to conduct the investigation in an ethical manner breached his fiduciary duty.

Likewise, Ingram alleges Bolden, as District Business Manager, owed Ingram a fiduciary duty to conduct the investigation in an ethical manner as he was likewise subject to Ohio's ethical rules. Also, Bolden was designated by Regano to head the investigation of Ingram.

Defendants contend Ingram's Breach of Fiduciary Duty fails because her Complaint does not allege any fiduciary duty owed Ingram by Defendants. In addition, they argue the law does not recognize a fiduciary duty created by ethics rules like the District's anti-harassment policy.

Ingram responds that a failure to act as a neutral investigator creates a fiduciary obligation.

"A fiduciary relationship is one in which one party to the relationship places a special confidence and trust in the integrity and fidelity of the other party to the relationship, and there is a resulting position of superiority or influence, acquired by virtue of the special trust." *Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, 476 F. Supp. 2d 809, 821 (S.D. Ohio 2007); *Ed Schory & Sons, Inc. v. Society Natl. Bank*, 75 Ohio St.3d 433, 442, 662 N.E.2d

1074 (1996).

Here, the fiduciary relationship requires a showing that the Defendants agreed to act primarily for the Plaintiff's benefit.  See *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 604 F. Supp. 2d 1128, 1148 (S.D. Ohio 2009).  (" A fiduciary is 'a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking.' ") quoting *Strock v. Presnall,*, 38 Ohio St.3d 207, 216, (1988) 527 N.E.2d at 1243. Ingram has failed to allege such a relationship because the plain language of the District anti-harassment policy, attached to her Complaint, demonstrates that Defendants' obligations run to the accused, the accuser, but primarily to the Board.

Under the heading "Anti-Harassment Compliance Officer," the Board designates the following individuals to serve as 'Anti-Harassment Compliance Officers' for the District" and names Regano as one of the designated officers.  The Compliance Officer is appointed to discuss concerns of harassment with students, District Community members and third parties.   The Compliance Officer acts as an intermediary to resolve conflicts between the accused and accuser when they agree to an informal resolution process.  When a formal complaint is filed, the Compliance Officer investigates and makes recommendations to the Superintendent.  Thus, the Compliance Officer acts primarily on behalf of the Superintendent.  He or she is an employee of the District, is appointed by the District and investigates complaints on behalf of the District and makes his or her recommendation to the Board.  The Compliance Officer investigates claims made by students, staff and third parties, so his or her duties do not run solely for the benefit of staff members like Ingram.  In fact, in the informal complaint process, the Compliance Officer attempts to reach a resolution for the benefit of all involved, including the accused.  The

21

Compliance Officer is tasked with keeping all parties informed of the status of the investigation and providing information to the accused and instructing the accused on the nature of the allegations and his or her right to submit a response. Ultimately, in the formal complaint setting, the Compliance Officer prepares a recommendation for the Superintendent's review and decision. Under these types of circumstances the Sixth Circuit has held there is no fiduciary duty. See *Helm v. Ratterman,* 778 F. App'x 359, 374 (6th Cir. 2019). ("These provisions show that Defendants' duties under the policy ran to several different persons and institutions; thus, Helm has not adequately shown that Defendants, through the ORI policy, promised to act primarily for his benefit so as to render them fiduciaries."). Therefore, Plaintiff has failed to plead a fiduciary relationship between her and Defendants; and thus, Defendants are entitled to judgment in their favor.

**<u>Civil Conspiracy</u>**

Lastly, Ingram alleges Defendants conspired with the District to deny her due process rights and property interest in her employment by maliciously and willfully inserting themselves in place of the Board during their investigation of the competing harassment claims.

Defendants argue they cannot be liable for civil conspiracy in their official capacities because the intracorporate conspiracy doctrine expressly holds that individual employees of the same entity cannot conspire with each other when acting in the course and scope of their employment. The Sixth Circuit has conclusively held, "the intracorporate conspiracy doctrine applies in § 1983 suits to bar conspiracy claims where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights." *Jackson v. City of Cleveland,* 925 F.3d

793, 818 (6th Cir. 2019), cert. denied sub nom. *City of Cleveland, Ohio v. Jackson,* 140 S. Ct. 855, 205 L. Ed. 2d 460 (2020).  Ingram does not contest judgment for Defendants in their official capacity for Civil Conspiracy; but instead alleges Defendants are not entitled to judgment in their individual capacities because they acted willfully and maliciously outside the scope of their employment and in bad faith.  This also puts them outside the Ohio immunity statute found at O.R.C. § 2744.

"Ohio law provides immunity for employees of political subdivisions under R.C. § 2744.03(A)(6).  This provision states that a political subdivision employee is immune from liability in a civil action for claims arising from the employee's official actions unless one of three exceptions applies:  (1) the employee's acts were manifestly outside the scope of employment or official responsibilities; (2) the acts were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) liability is expressly imposed by another section of the Revised Code. R.C. 2744.03(A)(6)(a)-(c)."  *Curry v. Blanchester,* 2010-Ohio-3368, ¶ 29.

"However, Ohio courts have generally drawn from agency-law principles to hold that 'conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business."  *Jackson v. McDonald* (2001), 144 Ohio App.3d 301, 307, 760 N.E.2d 24; *Chesher v. Neyer,* 477 F.3d 784, 797 (6th Cir. 2007).  "In the context of immunity, '[a]n employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take the act manifestly outside the scope of employment.'"  *Curry*, 2010-Ohio-3368, ¶ 30 quoting *Jackson* at 307, 760 N.E.2d 24.  "It is only where the acts of state employees are motivated by actual malice or other [situations] giving rise to punitive damages that their conduct may be outside the scope of their state employment."  *Id.*

In her Complaint, Ingram alleges Bolden and Regano improperly participated and directed the investigation into her retaliation complaint even though they were respondents to the complaint.  Shortly thereafter, Ingram suffered an adverse action.  These allegations are sufficient to allow her claim of Civil Conspiracy to proceed against Defendants in their individual capacities as they state a plausible claim for the same and therefore fall within the exceptions to Ohio's immunity statute.

Therefore, for the foregoing reasons, the Court grants Defendants' Motion for Judgment on the Pleadings on Ingram's Due Process claim, individual capacity Title VII claims, Breach of Fiduciary Duty claim and official capacity Civil Conspiracy claim.  The Court denies judgment for Defendants on all other claims.

IT IS SO ORDERED.


 /s/Christopher A. Boyko
CHRISTOPHER A. BOYKO
Senior United States District Judge