IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MERIBETHE R. INGRAM, ) | Case No. 1:19-cv-2926 |
| ) | |
| Plaintiff, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | THOMAS M. PARKER |
| JARAD J. REGANO, et al., ) | |
| ) | |
| Defendants. ) | **ORDER** |
| ) | |

Defendants Jarad J. Regano[1] and Fred E. Bolden II (collectively "defendants") move to quash, and for a protective order against enforcement of, plaintiff Meribethe R. Ingram's subpoena for documents and deposition testimony from non-party Randal G. Davis. The court previously granted in part and denied in part the motion but held in abeyance defendants' challenge to the production of a an unredacted copy of a February 16, 2018 email sent to Davis by Joseph V. Regano, which the defendants argue was protected by the attorney-client privilege and attorney work product. Because the matter was insufficiently briefed to permit a ruling, the court ordered defendants to either: (i) produce the email pursuant to a protective order; or (ii) file a supplement that provided a description of the email in compliance with Fed. R. Civ. P. 26(b)(5)(ii) and addressed the scope of what were Regano's duties as superintendent of the Solon City Schools District in relation to the email.

---

[1] The named defendants in the complaint are Joseph V. Regano and Fred E. Bolden II. Joseph Regano passed away during the pendency of the case and was substituted as defendant by Jarad J. Regano, the administrator of his estate. ECF Doc. 20; ECF Doc. 22; ECF Doc. 30. Use of "Regano" in this order refers to Joseph V. Regano.

Defendants have elected to file a supplement (ECF Doc. 85), to which plaintiff has filed a response (ECF Doc. 87). The matter is now ripe for adjudication. Because the redacted portions of the February 16, 2018 email are privileged and Regano lacked the authority to waive the school district's attorney-client privilege, defendants' motion (ECF Doc. 71) is GRANTED IN PART with respect to the February 16, 2018 email.

I.     **Relevant Factual Background**[2]

For context, Ingram was a substitute teacher and volunteer at Lewis Elementary School ("Lewis"). ECF Doc. 1 at 3. Beginning October 2017, Ingram reported being harassed by a male teacher, Davis. ECF Doc. 1 at 4–5; ECF Doc. 9-1 at 3. After initial inaction, Lewis's principal allegedly responded by removing Ingram from the substitute teacher list and informing her she was no longer welcome at Lewis. ECF Doc. 1 at 5.

On January 8, 2018, Ingram filed a formal complaint of sexual harassment and hostile work environment with Regano (the then-superintendent) and Bolden (the then-assistant superintendent), who investigated her case. *Id*. On January 11, 2018, Regano, Bolden, and Sherrie Massey (the school district's attorney) met with Ingram to discuss her allegations. ECF Doc. 1 at 5–6. And on January 18, 2018, Bolden and Regano met with Davis. ECF Doc. 1 at 6.

On January 29, 2018, Ingram requested that she be put back on the substitute teacher list. *Id*. Bolden responded that Ingram could not be allowed to substitute because she was the subject of a pending investigation; it was the first time Ingram was told she was under investigation. *Id*. Ingram requested from Massey a copy of the complaint against her, but Massey told Ingram it was an oral complaint. ECF Doc. 1 at 7–8. Massey indicated that the allegations against Ingram

---

[2] The recitation of facts in this section is limited to those facts necessary to give context to the February 16, 2018 email thread. Those facts are drawn primarily from Ingram's complaint and defendant's supplement. A fuller summary of the factual allegations underlying Ingram's claim can be found in the previous order. *See* ECF Doc. 84 at 2–8.

were being investigated according to district procedure; Ingram would receive a disposition and get an opportunity to respond; and the investigation would "take as long as it takes." ECF Doc. 1 at 7.

On January 31, 2018, Massey gave Ingram a copy of the school district's anti-harassment policy. *Id.* Ingram concluded that Bolden and Regano failed to provide her with the procedural protections required by the policy: (i) notice of the nature of the allegations against her; (ii) a copy of the relevant administrative guidelines; and (iii) and an opportunity to respond. ECF Doc. 1 at 8–9. On February 1, 2018, Ingram conveyed her claimed procedural violations to Massey and the parties began negotiating a possible settlement. ECF Doc. 1 at 8–10.

On February 5, 2018, Ingram emailed Massey a draft settlement agreement and offered to forward a copy Davis's attorney if Massey provided the attorney's contact information. ECF Doc. 85-1. Massey responded that she would review the agreement with her client and come back with comments/proposed changes. *Id.* Massey further stated that she would forward the draft agreement to Davis's union attorney. *Id.*

On February 15, 2018, Ingram followed-up on the settlement negotiations. ECF Doc. 75-6 at 2. Ingram expressed her disappointment at the pace of the investigation into her complaint and of her treatment throughout the course of the investigation process. *Id.* Ingram threatened to file a new complaint based the school district's failure to follow its anti-harassment policy during the course of its investigation into her harassment complaint if a resolution could not be reached by February 16, 2018. *Id.*

On February 16, 2018, Massey exchanged emails with Bolden and Regano about Ingram's proposed settlement agreement. *See* ECF Doc. 58-1 at 8–11. According to defendants, the substance of the exchanges concerned the terms of Ingram's settlement agreement and

whether additional changes needed to be made. ECF Doc. 85 at 2. Defendants state that Massey prepared a revised settlement agreement pursuant to those discussions, which she sent to Regano. *Id.* Regano then forwarded the entire email conversation with Bolden and Massey to Davis to get his input. *Id.*

## II. Law & Analysis

### A. Motion to Quash

Defendants argue, albeit implicitly, that the redacted portions of the February 16, 2018 email are privileged attorney-client communications because they concerned Massey's legal advice to the school board on Ingram's proposed settlement agreement. *See* ECF Doc. 71 at 6–7; ECF Doc. 76 at 3–4; ECF Doc. 85 at 2. They argue that Regano's act of forwarding Massey's legal advice to Davis did not waive attorney-client privilege because it was necessary to obtain Davis's input on the settlement terms which affected him individually and therefore facilitate Massey's legal advice to the board. ECF Doc. 76 at 6; ECF Doc. 85 at 2–3. Defendants alternatively argue that Regano did not have the authority to waive privilege on behalf of the school district, as his authority was limited to: (i) serving as a point of contact between the board's counsel and the school board; (ii) advising the school board on courses of action; and (iii) facilitating an informal resolution of Regano's complaint, the final disposition of which rested with the school board. ECF Doc. 76 at 4–7; ECF Doc. 85 at 3–4.

Ingram responds that it was unnecessary for Regano to forward Massey's legal advice in order to obtain Davis's input on the terms of the proposed settlement agreement. ECF Doc. 87 at 1–2. Ingram also argues that Regano could, as the school district's chief executive officer, waive the school district's privilege without a board resolution.[3] ECF Doc. 75 at 5; ECF Doc. 87 at 2.

---

[3] Ingram states in passing that no objection was made during Davis's deposition to questioning on the February 16, 2018 email. ECF Doc. 75 at 4. If the one-sentence statement was meant to be an argument

4

Upon a timely motion, the district court must modify or quash a subpoena that either "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). Generally, only the party to whom the subpoena is directed has standing to oppose it. *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002). The one exception is for a party who can establish a personal right or privilege with respect to the subpoenaed material. *Id.* at 306; see also *Mann v. Univ. of Cincinnati*, 114 F.3d 1188 (Table), *4 [published in full-text format at 1997 U.S. App. LEXIS 12482] (6th Cir. May 27, 1997). The movant carries a "heavy burden of proof" to establish standing to challenge a nonparty subpoena. *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995); see also, e.g., *Pianko v. Gen. R.V. Ctr., Inc.*, No. 20-13371, 2022 U.S. Dist. LEXIS 121794, at *2 (E.D. Mich. July 11, 2022); *Doe v. Metro. Gov't of Nashville*, No. 3:20-cv-01023, 2021 U.S. Dist. LEXIS 237690, at *5 (M.D. Tenn. Dec. 13, 2021).

Because we have federal question jurisdiction, federal privilege law applies even though there are also pendent state law claims. *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992). The party resisting a discovery request on the basis of privilege has the burden to establish its existence. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 2000). The attorney-client privilege precludes disclosure of communications between an attorney and his client regarding legal advice. *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006); *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). The privilege has eight elements:

> (1) Whe[n] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made

---

that defendants waived any assertion of privilege, the argument is too perfunctory to warrant consideration. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). Moreover, no waiver occurred because Davis never disclosed the substance of the redacted portions of the email thread. *See* ECF Doc. 75-3 at 5; ECF Doc. 75-4 at 3–4.

>in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985) (internal quotation marks omitted).

The voluntary disclosure of attorney advice to a third party can waive the attorney-client privilege. *In re Lott*, 424 F.3d 446, 452 (6th Cir. 2005); *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996). The scope of the waiver extends to communications on the same subject matter. *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 856 (6th Cir. 2010).

The court finds that the redacted portions of the February 16, 2018 email are privileged. According to defendants' description, the redacted portions concern communications between Bolden, Massey, and Regano over the terms of Ingram's proposed settlement agreement, modifications made by Massey pursuant to those discussions, and Massey's advice on those modifications. *See* ECF Doc. 85 at 2. The emails exchanged between Bolden, Massey, and Regano also appear on their face to have been made in confidence. *See* ECF Doc. 58-1 at 8–11; *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 85 (W.D. N.Y. 2011) ("Draft documents prepared by a client and submitted to counsel to facilitate rendering legal advice on proposed transactions may remain privileged although the final version was intended for distribution to third-parties.").

Next is the issue of waiver. Defendants do not dispute that Regano's disclosure was voluntary; rather, they argue that the disclosure was for the purpose of facilitating Massey's legal advice (and therefore within the scope of the privilege). The court agrees that Davis's input on Massey's modified settlement terms was necessary for Massey to draft a final settlement agreement that would be agreeable to all parties involved. *See* ECF Doc. 85-1. But defendants

have not squarely addressed what the need was for Regano to share the confidential conversation between Regano, Bolden, and Massey about the modified draft settlement agreement. They have not, for example, asserted that Regano did so at Massey's direction because Massey thought Davis needed to know in order to properly evaluate the modified settlement agreement. *See generally* ECF Doc. 71; ECF Doc. 76; ECF Doc. 85.

Defendants also cite caselaw concerning the dissemination of privileged communications between corporate employees. *See* ECF Doc. 76 at 2–3; ECF Doc. 85 at 2–3; *see also Graff v. Haverhill N. Coke Co.*, No. 1:09-cv-670, 2012 U.S. Dist. LEXIS 162013, at *21 (S.D. Ohio Nov. 13, 2012) ("Courts have extended the protection outlined in *Upjohn* to communications between non-attorney corporate employee[s] whe[n] the communications were made for purposes of securing legal advice from counsel."). However, defendants have not attempted to establish how that precedent extends to the dissemination of privileged communications under the facts of this case. Again, they have not articulated in what way the dissemination of Massey's legal advice to Davis, a separately represented teacher, was for the purpose of facilitating Massey's legal advice to the school board on the proposed settlement agreement. *See Wrench LLC v. Taco Bell Corp.*, 212 F.R.D. 514, 517 (W.D. Mich. 2002) ("while corporate executives may share legal advice with lower-level corporate employees without waiving the privilege, the privilege extends only to those employees with a "need to know," including those employees with general policymaking authority and those with specific authority for the subject matter of the legal advice").

Nevertheless, the court finds that Regano lacked the authority as superintendent to waive the school district's privilege. In the case of entities like the school district, the authority to waive privilege belongs to whomever is designated by statute as management. *See Commodity*

7

*Futures Trading Comm'n. v. Weintraub*, 471 U.S. 343, 349 (1985). For an Ohio school district, management is the district's board of education. *Cincinnati City Sch. Dist. Bd. of Educ. v. Conners*, 132 Ohio St.3d 468, 470 (Ohio 2012). Thus, the school board retains the exclusive authority to waive privilege. *See Rojicek v. River Trails Sch. Dist. 26*, No. 01 C 0723, 2003 U.S. Dist. LEXIS 6324, at *7 (N.D. Ill. Apr. 16, 2003).

The school district could, of course, have empowered Regano, as superintendent, to waive its privilege. Ohio Rev. Code § 3319.01. But according to defendants and the materials they've provided, Regano was neither empowered to do so generally nor specifically in respect to the February 16, 2018 email. ECF Doc. 85 at 3; ECF Doc. 85-2 at 1 ("In order to expedite negotiation procedures, the Superintendent is appointed as chief representative of the Board for the purpose of determining negotiation strategies and members of negotiation teams for collective bargaining with recognized unions and employee units."); ECF Doc. 85-2 at 2 (listing the duties and responsibilities of the superintendent); *see also* ECF Doc. 1-1 at 6–7 (stating Regano's duties and responsibilities as a compliance officer).

Ingram counters that express approval from the school board was unnecessary, citing *Miles-McClellan Construction Company v. Board of Education Westerville City School Board*, 2006-Ohio-3439, (Ohio Ct. App. 2006) (hereafter "*Miles-McClellan*"). ECF Doc. 75 at 5. In *Miles-McClellan*, the attorney for Westerville City Schools produced during discovery material covered by the attorney-client privilege. *Id.* at ¶3. The Ohio Court of Appeals held that, assuming the attorney's "appointment was properly ratified, the actions of such a properly-appointed agent in the conduct of the litigation must be taken as authorized by the principal." *Id.* at ¶11. And in so ruling, the court rejected the schools' argument that "attorney-client privilege

8

could only by waived by an affirmative vote reflected in an explicit resolution of the school board acting as a body." *Id.*

The court finds *Miles-McClellan* inapplicable. *Miles-McClellan* was consistent with the general rule that an attorney can waive the attorney-client privilege of his client even without express authorization to do so. *In re Grand Jury Subpoena 93-2-1-01*, 9 F.3d 107 (Table), *6 [published in full-text format at 1993 U.S. App. LEXIS 28827] (6th Cir. Nov. 4, 1993); *Grace v. Mastruserio*, 912 N.E.2d 608, 613-14 (Ohio Ct. App. 2007). And part of the court's reasoning was that "perform[ing] all functions attendant to the management of documents in the case, whether privileged or not," including discovery production, was implied in the attorney's authority as agent during the litigation. *Miles-McClellan*, 2006-Ohio-3439, at ¶11. But Regano was neither the school district's attorney nor acting as the school district's agent in litigation at the time of the February 16, 2018 email. His role was limited to attempting to negotiate an agreement that would be acceptable to all parties and that he could present to the school board for approval. Dissemination of counsel's advice to third parties would not fall within the functions attendant to the scope of Regano's authority as the school board's agent during the negotiations.

In summary, the redacted portions of the February 16, 2018 email contained communications protected by attorney-client privilege. Although defendants have not met their burden to establish that Regano's third-party disclosure did not remove the redacted portions of the email outside of the privilege, he lacked the authority to waive the school district's privilege. The court therefore concludes that defendants have established standing to quash the Davis subpoena with respect to the February 16, 2018 email.

9

Defendants' motion to quash is GRANTED IN PART with respect to Ingram's subpoena request for an unredacted copy of the February 16, 2018 email thread sent by Regano to Davis. The court does not reach the issue of whether attorney work product also bars production of the email.

### B. Protective Order

Defendants' motion also includes a request for the court to enter a protective order to protect against the production of materials requested in the Davis subpoena. ECF Doc. 71 at 9.

A court may issue a protective order "for good cause … to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such an order may forbid or limit the scope of discovery of certain matters. Fed. R. Civ. P. 26(c)(1)(A), (D). The starting point is whether discovery for which a protective order is sought is relevant. Fed. R. Civ. P. 26(b)(1); *see also, e.g.*, *T.C. ex rel. S.C. v. Metro. Gov't of Nashville & Davidson Cnty.*, Nos. 3:17-CV-01098/3:17-CV-01159/3:17-CV-1209/3:17-CV-02177/3:17-CV-1427, 2018 U.S. Dist. LEXIS 113517, at *17 (M.D. Tenn. July 9, 2018); *Queen v. City of Bowling Green*, No. 1:16CV-00131, 2017 U.S. Dist. LEXIS 160425, at *12 (W.D. Ky. Sept. 28, 2017). If the information sought appears relevant, the party seeking the protective order must "articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (internal quotation marks omitted).

As discussed above, the redacted portions of the February 18, 2018 email are privileged and Regano lacked the authority as superintendent to waive the school district's privilege by forwarding the legal advice contained therein to Davis. Because the email is privileged, it falls outside the scope of material discoverable under Rule 26(b)(1). Fed. R. Civ. P. 26(b)(1).

Thus, defendants' motion for a protective order is GRANTED IN PART with respect to the Davis subpoena request for an unredacted copy of the February 18, 2018 email.

**IT IS SO ORDERED.**

Dated: December 21, 2022

                                                    Thomas M. Parker
                                                    United States Magistrate Judge