# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **MERIBETHE R. INGRAM,** | ) | **CASE NO.1:19CV2926** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **JARAD J. REGANO, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendants.** | ) | |

## CHRISTOPHER A. BOYKO, J:

This matter is before the Court on Defendants' Fred E.  Bolden, II and Jarad J.  Regano, Administrator of the Estate of Joseph V.  Regano Fed.  R.  Civ.  P. 56 Motion for Summary Judgment (ECF # 111) and Plaintiff Meribethe Ingram's Motion for Partial Summary Judgment (ECF # 112).   For the following reasons, the Court denies Plaintiff's Motion and grants Defendants' Motion for Summary Judgment on all Plaintiff's remaining claims.

### Background Facts

As recounted by the Court in its prior ruling on Defendants' first Motion for Judgment on the Pleadings, Plaintiff Meribethe Ingram ("Plaintiff") alleges she worked and volunteered in various capacities at Lewis Elementary, the school her children attended, as a Substitute Teacher, Reading Recovery and Back Up Media Specialist, Testing Assistant and Parent Workroom Coordinator.  Beginning in October 2017, Plaintiff  alleges she was harassed by a teacher at

Lewis and reported it to the Lewis Administrators but nothing was done about it.  In December 2017, Joseph Regano, a District Superintendent and Compliance Officer, was made aware of Plaintiff's harassment complaint.  Instead of investigating her complaint, Plaintiff was informed she was no longer welcome on the Lewis Elementary premises.  According to Plaintiff, this action was retaliatory and violated the District's anti-harassment policy.

Plaintiff subsequently pressed the issue and an investigation was finally commenced but the retaliation against Plaintiff continued.  In January of 2018, Regano and Fred Bolden, Business Manager and Assistant Superintendent, met with Plaintiff and her alleged harasser Randal Davis, a second grade teacher at Lewis in the course of their investigation.  When asked that she be put back on the substitute teacher list, Plaintiff was informed she could not be returned to the list because she was under investigation.  It was the first time Plaintiff asserts she was told there was an ongoing investigation of her.  Plaintiff was never provided any written complaint against her.  Thus, she contends she was denied certain protections offered by the District's anti-harassment policy, including:  a written complaint outlining the allegations against her; an opportunity to respond to the allegations and an impartial hearing before the District's Authorities took away her substitute teaching and volunteer opportunities at Lewis.

In February 2018, Plaintiff filed a written complaint for unlawful retaliation with both Bolden and Regano as respondents.  Plaintiff alleges the District however, allowed Bolden and Regano to oversee the investigation even though both were the subject of the investigation.  In March 2018, after learning he was the subject of Plaintiff's retaliation complaint, Regano issued a determination that Plaintiff harassed her alleged harasser.  As a result, Regano stripped her of her substitute teaching employment and volunteer opportunities at Lewis Elementary.   Plaintiff's

2

retaliation complaint was denied in April 2018.

Ingram appealed the finding that she had harassed a teacher at Lewis and appealed the denial of her retaliation complaint.  Her appeals were heard by the Solon City Schools District Board of Education.  In May 2018, the Board denied both Ingram's appeals.  In September of 2018, Ingram received her Right to Sue from the EEOC and subsequently filed this action.

## Procedural Background

Plaintiff filed her Complaint with the Court on December 19, 2019.    Defendants moved for Judgment on the Pleadings on all Plaintiff's claims.  The Court dismissed Plaintiff's procedural Due Process, Breach of Fiduciary Duty, individual capacity Title VII, and official capacity Civil Conspiracy claims. The Court denied judgment for Defendants on Plaintiff's Equal Protection, official capacity Title VII, state law discrimination, retaliation and individual capacity Civil Conspiracy claims.  Defendants appealed and the Sixth Circuit affirmed this Court's ruling.

Plaintiff also brought suit in the Cuyahoga County Court of Common Pleas against the Solon Board of Education.  The state court granted summary judgment for Defendants, finding that Plaintiff failed to show she suffered an adverse employment action.  As a result, Defendants moved again for judgment on Plaintiff's remaining claims in this Court, contending that res judicata prohibited Plaintiff from arguing that she suffered an adverse employment action and that she had failed to state a claim upon which relief could be granted.   The Court agreed and dismissed four of  Plaintiff's remaining claims based on issue preclusion and two for failure to state a claim.  Plaintiff appealed and the Sixth Circuit affirmed the Court on its dismissal of Plaintiff's Due Process, Fiduciary Duty and Attorney-Client Privilege claims.  The Sixth Circuit further affirmed the Court's holding that Plaintiff cannot assert an adverse employment action

based on her being barred from working or volunteering at Lewis Elementary School as the state court's finding this was not an adverse employment action was binding on this Court.

However, the Sixth Circuit reversed the Court on the issue of whether a  biased and unfair investigation could constitute an adverse employment action if it altered the terms and conditions of her employment as violating of the Solon School District's anti-harassment policy.

## Standard of Review

Summary judgment shall be granted only if  "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).   The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *See* Fed.R.Civ.P. 56(c)(1)(A), (B).   A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine

4

issues of material fact.  *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996);

*Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992).  The burden

falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v.

Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the

necessary showing on an element upon which it has the burden of proof, the moving party is

entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is

appropriate depends upon "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003)

(quoting *Anderson*, 477 U.S. at 251-52).

**<u>Defendants' Motion for Summary Judgment</u>**

Defendants move the court for summary judgment on all Plaintiff's remaining claims.

According to Defendants, Plaintiff has failed to meet her burden showing sex discrimination

because the undisputed evidence demonstrates Defendants conducted an impartial investigation

that resulted in a correct determination unrelated to Plaintiff's sex.  Moreover, Defendants argue

Plaintiff has failed to show she was similarly situated to Davis and treated differently than Davis

in the course of the investigation.  As result, Plaintiff has failed to meet her prima facie burden

on her claims arising from sex discrimination under the Equal Protection Clause, Title VII and

O.R.C. § 4112.

Defendants further contend they are entitled to qualified immunity on Plaintiff's claims

because in 2018, when the investigation occurred, there was no clear and established caselaw in

the Sixth Circuit permitting liability against school administrators arising from investigations that

did not affect employment terms and conditions.

Defendants also move for summary judgment on Plaintiff's claim of unlawful retaliation. Defendants argue Plaintiff cannot show that Defendants knew of Plaintiff's alleged protected activity when they conducted their investigation. Neither can Plaintiff show she suffered an adverse employment action nor that there was any causal connection between the two.

Because Plaintiff has failed to prove that either Regano or Bolden interfered with the investigation of her complaint and Plaintiff has failed to meet her evidentiary burden demonstrating that they acted recklessly, maliciously, in bad faith or wantonly, her claim for Civil Conspiracy fails.

**Plaintiff's Motion for Partial Summary Judgment**

According to Plaintiff, the undisputed facts demonstrate that Defendants retaliated against Plaintiff after she filed her February 27, 2018 complaint against them and moves for summary judgment in her favor on her retaliation claims under federal and state law. Defendants conducted a biased investigation that violated the provisions of the District's anti-harassment policy and by engaging in the investigation though they were respondents in her retaliation claim, they possessed a clear conflict of interest. Plaintiff can show Defendants knew of her claims against them and took actions against her that fundamentally altered the terms and conditions of her employment, constituting an adverse employment action. She can also show these actions were causally connected to her filing of her Complaint.

**Defendants Motion on Retaliation**

Defendants move for summary judgment on Plaintiff's claims of unlawful retaliation in violation of Title VII and Ohio law contending she can show no adverse employment action for

either her December 17, 2017 report to Michael Acomb, Principal of Lewis Elementary, that Davis stared at her nor for her, February 2018 retaliation complaint.   Moreover, Defendants assert that the investigation and subsequent  findings were fair and unbiased and the investigatory process itself is not an adverse employment action.

According to Defendants, during the 2016-2017 school year Plaintiff volunteered at Lewis Elementary School in Davis's classroom, helping two students improve their reading skills.  Davis appreciated Plaintiff's help with his students and relayed that appreciation to Plaintiff.  Davis testified that he spoke to Plaintiff no differently than he did to all his classroom volunteers.  Davis and Plaintiff spoke over the phone during winter break about his students.  However, things began to change thereafter as Plaintiff's communications with Davis became more personal.  In March 2017, Plaintiff wrote Davis a five page letter discussing her prior relationship issues while she was in teaching-related positions.  In her letter, Plaintiff wrote that "I have a weakness for friendships with male educators" and " I do realize my motives are easily misconstrued."  (ECF # 111-12).

After this letter, Davis's interactions with Plaintiff changed as he avoided discussing personal issues and tried to keep all communications professional.  In response, Plaintiff wrote emails discussing personal subjects and even noting Davis's change in behavior towards her. (ECF # 111-13,14).

The following school year 2017-2018, Davis had no students who needed reading assistance, yet Plaintiff continued to email him.  When Plaintiff offered her reading assistance Davis declined.  Plaintiff began volunteering in the copy room, collating math lessons for second grade teachers.  In September 2017, Plaintiff emailed Davis asking to discuss in person the

7

progress of the project.  Davis declined to discuss the project in person but instead informed

Plaintiff that other parents offered to help on the collating project.  Plaintiff was upset by Davis's

response and emailed him the various problems she had with the project.  She also criticized

Davis for his aloof manner and indicated a desire to have a nice, normal and friendly relationship

with Davis.

Davis consulted with Acomb in September of 2017 about Plaintiff's communications

with him.  He showed Acomb some emails from Plaintiff  and told Acomb he wanted the

communications to stop.  Acomb advised Davis to tell Plaintiff he wanted no further

communications with her.  (Acomb depo.  pgs. 31-35).   Shortly thereafter, Davis asked Plaintiff

to stop contacting him and Plaintiff agreed.  (ECF # 111-17).  However, Davis received unsigned

letters in his office mailbox which he believed were from Plaintiff.  Instead of responding to the

unsigned letters, Davis passed them to Acomb.

Then on October 17, 2017, Acomb met with Plaintiff and instructed her to stop all

communications with Davis, warning her that continued communications could result in her

restriction from volunteering and substituting at Lewis.  ( Acomb depo pg.  56) (Plaintiff

Preliminary Statement (ECF # 111-11 pg. 5).  However, on December 14, 2017, Plaintiff told

Acomb she was going to contact Davis because she believed he was interested in resolving their

personal issues.  Plaintiff sent Davis an email.  When Davis passed the email to Acomb, Acomb,

after discussions with Regano, subsequently informed Plaintiff she could no longer substitute

teach or volunteer at Lewis Elementary.  These restrictions did not apply to other school

buildings.  However, Plaintiff emailed Davis again and followed it up with an email to Acomb

wherein she indicated her emails were a potential complaint.  Plaintiff copied Davis on her email

8

to Acomb.  Davis did not respond to either emails.

Upon receipt of her email complaint and a corresponding complaint by Davis, the district began an investigation into both complaints.  Regano and Bolden interviewed both Davis and Plaintiff separately in January of 2018.   Defendants argue Regano's interviews with Plaintiff and Davis were largely identical with both sides receiving: notice of the interview, the same introductory remarks that Davis and Plaintiff had filed a complaint and descriptions of the alleged harassing conduct.  Both sides offered responses to the allegations and then explained the resolution they sought.

In March of 2018, Regano rendered his decision, finding that Plaintiff harassed Davis by sending him unwanted messages from September to December of 2017.  He reaffirmed Plaintiff's restriction from volunteering or substitute teaching at Lewis.  Plaintiff appealed Regano's decision to the School Board which ultimately denied her appeal in May of 2018.

In February of 2018, Plaintiff filed a second complaint alleging her restrictions were the product of retaliation for complaining about harassment.  She named as Respondents Acomb and Bolden along with any Solon School District administrator, teacher, third party advisor or staff member who directed, advised upon or authorized the complained of actions.

The District brought in an outside investigator, Attorney Katie Clifford, to investigate Plaintiff's retaliation claims.  Clifford interviewed twenty-seven witnesses and wrote a forty-two page report wherein she concluded that Plaintiff's restrictions were not due to unlawful retaliation but were due to Plaintiff's continued unwanted communications to Davis after she was instructed not to.  Moreover, Clifford found that there could not have been unlawful retaliation since the restriction was imposed on December 15, 2017 and Plaintiff first complained of

9

harassment on December 26, 2017.  These findings were adopted by the Solon Assistant Superintendent of Curriculum and Instruction who issued a disposition.  Plaintiff appealed and the Board denied the appeal.

Subsequently, Plaintiff filed five more complaints in 2018 and 2019.  These complaints alleged: the internal investigation was biased; the Clifford investigation was compromised; Davis spread rumors about Plaintiff and that Acomb smiled and winked at Plaintiff's daughter.

As a result, the District hired another outside investigator, the Taft Law Firm, to review Plaintiff's claims.  After an extensive review, including interviews and reviews of the relevant documents, the Taft investigators  concluded in its October 2019 investigation report that although the district should have provided Plaintiff a written complaint containing Davis's allegations against her, there were no policy violations by any Defendants in addressing Plaintiff's claims.

The Taft investigation concluded that neither Regano's participation nor Bolden's created a conflict of interest.  They found credible both Bolden and Clifford's representation that Bolden's involvement concerned logistic support as a point of contact.  Taft further found that Plaintiff had notice of the harassment allegations against her and the details thereof at the latest by January 11, 2018.  She had the anti-harassment policy and had an opportunity to refute his allegations.  Plaintiff then filed this suit.

According to Defendants, Plaintiff's Equal Protection and Sex Discrimination under Title VII and Ohio law claims fail because she cannot make a prima facie claim showing an adverse employment action or disparate treatment compared to a similarly situated comparator outside the protected class.  Based on the undisputed evidence presented, Plaintiff cannot show the

10

investigation resulted in an erroneous conclusion due to a biased investigation.

Defendants contend the  undisputed evidence shows that Plaintiff continued to contact Davis after Davis asked her to stop and after she was instructed to stop by Acomb.   Even after she was restricted from substitute teaching and volunteering at Lewis, Plaintiff contacted Davis, even expressing her attraction to him.  It was this harassment and continued contact of Davis despite express instructions from Acomb to cease all contact that was the motivating reason for her restrictions and not unlawful bias or sex discrimination.  Because of this undisputed evidence, Regano reasonably concluded that Plaintiff's restrictions were warranted in order to limit her interactions with Davis and to prevent any future harassment.  Thus, Plaintiff's claim of a biased investigation must fail because she cannot show an erroneous outcome.

Nor can Plaintiff show the investigation of her alleged misconduct was biased against her due to her sex.  Defendants contend the investigations were nearly identical in all relevant respects.

Defendants further contend that Plaintiff cannot maintain her sex discrimination and Equal Protection claims because she cannot show she was treated less favorably than a similarly situated person outside the protected class.   The parties are not similarly situated because: months before the investigation commenced Plaintiff agreed not to contact Davis yet admittedly did so.  Davis did not engage in such behavior.  Again, even before the investigation began Plaintiff was restricted from volunteering and substitute teaching at Lewis for communicating with Davis after Acomb told her not to.  Davis did not violate Acomb's instructions and did not reach out to try and communicate with Plaintiff.  Lastly, after being restricted by Acomb, Plaintiff wrote Davis expressing her attraction to him.

11

Qualified immunity insulates Defendants from liability as there was no clearly established law holding that a purportedly biased investigation violated Plaintiff's constitutional or statutory rights.  Nor can she argue a violation of the same as a result of an investigation that was not identical in all respects.

Collateral estoppel bars her claim of an adverse employment action based on her restrictions from volunteering and substitute teaching at Lewis.  Nor can Plaintiff show that her reporting of Davis's alleged staring at her resulted in an adverse action.  She cannot show she reported it to Acomb as harassing but instead reported it as the reason why she wanted to reach out to Davis in violation of Acomb's restrictions.  Her preliminary statement does not mention the staring as harassment and six days afterwards her email to Davis expressed how much she enjoyed just seeing Davis in the building.  Defendants argue they were unaware of any report of harassment by Plaintiff on December 14.  Instead, Plaintiff told Acomb about Davis's alleged staring and anonymous phone calls as evidence that Davis wanted to talk to her and were the reason she reached out to Davis after she was restricted from doing so.  Instead, Defendants first learned of her harassment allegations based on Davis's alleged staring in her January 29, 2019 complaint.  Thus, it cannot be the basis for a retaliatory investigation that occurred in 2018.  Nor can Regano's investigation be retaliatory.  Regano completed his investigation in January 2018 and Plaintiff filed her Complaint a month later.

Finally, Defendants' investigation cannot have been due to a civil conspiracy as there is no evidence of malicious intent or an unlawful act.  Bolden's participation was merely logistical, arranging interviews for the independent investigator and providing documents.  Clifford testified that neither Defendant played any significant role in her investigation, had no access to

her Report, nor provided any input or influenced her findings.  The Taft firm corroborated there was no undue influence in the Clifford investigation nor did Defendants' actions create an improper conflict.  Clifford found no evidence of retaliation.  Finally, Defendants are wholly immune from liability based on individual capacity as there was no evidence of malice, wantonness or recklessness in the investigation as evidenced by the Clifford and Taft reports.

In short, none of Plaintiff's claims can survive summary judgment because the investigation was not biased and she was not treated differently than or similarly situated to Davis.

**Plaintiff's Motion and Opposition**

Plaintiff moves affirmatively for summary judgment on her retaliation claims.  Plaintiff argues she was the subject of unlawful retaliation due to her complaints about Davis's behavior towards her.  She eventually complained to Acomb that she was being harassed by Davis, that he was following her and staring at her.  On January 8, 2018, Plaintiff submitted a written complaint to Regano and met with Defendants on January 11, 2018 to discuss her complaint.  According to Plaintiff, during this meeting there was no discussion that Davis had made allegations of harassment against Plaintiff and Plaintiff was never given any written complaint against her.  A week later Defendants met with Davis.  Defendants failed to record the allegations made against Plaintiff at that meeting nor did they have Davis sign any written allegations as required by the District's anti-harassment policy.

Near the end of January 2018, Plaintiff realized she was not getting substitute teaching work and reached out to Defendants to ask why.  She was informed she was restricted from work at Lewis due to the complaints she and Davis had submitted against each other.  Plaintiff

complained that she had never been informed of the allegations against her and asked for a copy of Davis's complaint against her.  When Defendants ignored her request, Plaintiff submitted a formal complaint against Defendants for retaliation due to their failure to abide by the District Anti-Harassment policy.

Defendants hired Clifford to investigate Plaintiff' retaliation allegations.  At the start of the investigation Regano instructed Bolden to take care of the investigation even though Bolden was a named respondent in Plaintiff' s February 27, 2018 complaint.  Clifford acknowledged that Regano told her to work through Bolden.   It is undisputed that Bolden was involved in the investigation into Bolden's own alleged misconduct by handling draft witness statements, facilitating communications with the District's IT department to retrieve emails and videos, handling review and redaction of video and emails, coordinating the gathering of exhibits and consulting with Regano to direct the handling of exhibits rather than having Clifford send them to the District's compliance officer.

Regano wrote that having someone from the central office contacting witnesses would constitute undue influence even though Bolden worked for the central office.  Regano still directed Bolden to handle those duties despite having a compliance officer, Debbie Siegel, that could have been directed to perform the duties.  When Siegel received the Report from Clifford, Siegel contacted Bolden asking how to proceed with the Report.  Bolden told her to hold on to the Report until she talked with Regano.  Siegel sent the Report to Regano two days before she issued her disposition.  Regano subsequently sent the Report to Bolden.

On April 5, 2018, Siegel issued her disposition.  Plaintiff contends the disposition was pre-determined given Bolden and Regano's management of the investigation process, production

of evidence and instructing Siegel on what to do with the Report.

When Plaintiff informed Siegel she was going to appeal Siegel's disposition, Siegel reached out to Regano to inquire as to what she should do next.  Regano told Siegel the District would handle the appeal.  Plaintiff appealed on April 12, 2018.

When Plaintiff filed her February 27, 2018 complaint she did not name Regano as a respondent directly but instead included administrators, teachers and staff, which included Regano.  Regano knew he was named indirectly as a respondent and Plaintiff informed Clifford expressly that Regano was a respondent.  However, three days after Plaintiff informed Clifford, Regano issued his disposition, finding that Plaintiff harassed Davis and further found Davis did not harass Plaintiff.

When Plaintiff requested and received a copy of the Clifford Report she found it full of allegations she was never apprised of nor given an opportunity to refute.  Ultimately the District reviewed the disposition and subsequent appeals and held a hearing on April 23, 2018.  They denied both Plaintiff's appeals.  Plaintiff filed further internal complaints centered on Defendants' participation in the investigation into their own alleged misconduct.  Defendants then hired the Taft Law Firm to investigate these complaints.  Plaintiff alleges the Taft Law Firm lacked independence.  The Taft Law Firm found against Plaintiff and in favor of Defendants.

Plaintiff moves for judgment on her retaliation claims contending she meets all the prima facie elements as her complaints of unlawful work practices was a protected activity when she filed her December 2017 and  February 27, 2018 complaints.  She further alleges she can show Defendants Regano and Bolden knew of her complaints against them for retaliation.  Defendants took actions against Plaintiff that so altered her terms and conditions of employment that these

15

acts constitute an adverse employment action.  In fact, the Sixth Circuit in reversing in part the Court's ruling for judgment on the pleadings held that "...it may also be true that a sufficiently biased investigation could pass muster" and "count as a cognizable adverse employment action..."  Because Defendants failed to abide by the requirements of the District's anti-harassment policy, Plaintiff alleges she suffered an adverse employment action.  Defendants' participation in the investigation of their own misconduct, and "fabricated" disposition demonstrate retaliation for her complaint.  Moreover, they violated the District's policy and Ohio Ethics law.

## ANALYSIS

Title VII provides that:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

A plaintiff may establish a retaliation claim either with "direct evidence" or "indirect evidence" through the *McDonnell Douglas* burden-shifting framework.  *Redlin v. Grosse Pointe Pub. Sch. Sys.,* 921 F.3d 599, 613 (6th Cir. 2019) citing *Laster v. City of Kalamazoo,* 746 F.3d 714, 730 (6th Cir. 2014).  The parties restrict their arguments to proof via indirect evidence.

The Court's analysis of retaliation claims under Ohio law mirrors that of Title VII. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 541 (6th Cir. 2003).  To establish a prima facie case for unlawful retaliation under Title VII a plaintiff must show: "(1) he engaged in an activity that is protected under Title VII; (2) the defendant was aware of the protected activity; (3) the defendant then took a materially adverse action against the plaintiff; and (4) a causal connection

exists between the protected activity and materially adverse action." *Redlin,* 921 F.3d at 613. If a plaintiff can make out a prima facie case of retaliation, the defendant then must articulate a legitimate, non-retaliatory reason for the termination. *Id.* The plaintiff then must show that defendant's stated non-retaliatory reason for the termination was mere pretext. *Redlin,* supra, 921 F.3d at 614. In *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), the Supreme Court held that Title VII retaliation claims require the plaintiff prove that unlawful retaliation was the but-for cause of the adverse action and not the lessened causation test stated in § 2000e–2(m). "In this way, Title VII retaliation claims require proof that the desire to retaliate was the "but-for cause" of the challenged employment action. This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action(s) of the employer." *Martin v. Saginaw Cnty. Rd. Comm'n,* 606 F. Supp. 3d 639, 648 (E.D. Mich. 2022) citing *University of Texas,* 570 U.S. at 360.

Here, there is no genuine dispute that Plaintiff engaged in a protected activity when she complained of harassment and retaliation. See generally *Jackson v. Genesee Cnty. Rd. Comm'n,* 999 F.3d 333, 344 (6th Cir. 2021) (holding that employee complaints of unlawful discrimination constitute protected activity.). According to Plaintiff, her December 2017 and February 27, 2018 internal complaints were protected activity. In these complaints she complained about working in a hostile work environment and being subject to harassment and retaliation. As there is no genuine dispute, the Court finds Plaintiff has met her burden demonstrating she engaged in protected behavior.

The second prima facie factor requires evidence that Defendants Bolden and Regano had

17

knowledge of Plaintiff's protected activity.  Regano investigated the harassment complaint and both he and Bolden were Respondents in the February complaint.  Both Bolden and Regano do not contest that they were made aware of Plaintiff's allegations in her February complaint.  Thus, Plaintiff has satisfied the second element of her retaliation claims.

Defendants contest the third and fourth elements of her retaliation claim, namely, that she suffered an adverse employment action as a result of their biased investigation and that there is a causal connection between Plaintiff's alleged retaliation and her complaint.[1]  The Sixth Circuit affirmed this Court's holding that Plaintiff could not assert that Defendants' barring her from volunteering or substitute teaching at Lewis was an adverse employment action.  Instead, Plaintiff alleges that the investigation of her complaints was an adverse action due to the alleged bias and inherent conflict of interest.  Plaintiff argues Defendants provided notice of the allegations against Davis and gave him an opportunity to refute them.  They denied both to Plaintiff.  They further denied her an opportunity to an impartial hearing on her February 27th complaint and appeals.  In addition, Plaintiff alleges Defendants retaliated against Plaintiff by issuing the March 14th disposition as a result of their flawed investigation and close-in-time filing of her February complaint.

Defendants argue that Plaintiff's retaliation claim fails because the allegedly biased investigation occurred in January 2018, a month before Plaintiff's February 2018 complaint.

---

[1]  In her Opposition Brief, Plaintiff alleges an additional adverse action-that subsequent to the filing of this action she has been denied reapplication for her substitute teaching and volunteer opportunities at Lewis in retaliation for filing this suit.  However, this allegation was obviously not part of her Complaint, was not part of an amended complaint adopted by the Court nor has she produced evidence she was granted a right to sue by the EEOC or Ohio Civil Rights Commission on this new adverse action.  Therefore, the Court will not consider it as part of this action.

Thus, it cannot have been in retaliation for a filing that had not yet occurred and Plaintiff cannot show a causal connection between the protected activity and the allegedly biased investigation.

As an initial matter, insofar as Plaintiff alleges retaliation for Defendants' failing to provide due process or in denying her substitute teaching and volunteer opportunities as Lewis Elementary School, those claims have been disposed of in the Court's Opinion and Order (ECF #28), holding plaintiff could not state a claim for a due process violation as she had no property interest in a substitute teaching or volunteer position at Lewis.  (Affirmed ECF 32).  Nor could Plaintiff show she suffered an adverse employment action for loss of the same.  (ECF # 93, affirmed ECF 97).  Thus, Plaintiff's remaining retaliation claims arise from the alleged retaliatory March 14th disposition in response to her filing of her December 2017 and February 27, 2018 complaints and Defendants' alleged biased conduct in the investigations.[2]

A timeline of key events is crucial for adjudicating this matter.  It is undisputed that Davis

---

[2]  The Court notes that Plaintiff did not allege a claim for unlawful Retaliation under Title VII.  Nowhere in her Complaint did she assert such a claim, nor did she object to the Court's Motion for Judgment on the Pleadings when it characterized her claims as follows: "Plaintiff Meribethe R. Ingram, ("Ingram") brings this suit against Defendants Joseph V. Regano ("Regano") 1 and Fred E. Bolden, II ("Bolden") in their official and personal capacities for violations of her Procedural Due Process and Equal Protection rights guaranteed by the United States Constitution. Ingram alleges Defendants deprived her of her property interest in her substitute teaching and other specialist positions at Lewis Elementary School in Solon, Ohio. She further alleges Sexual Discrimination claims in violation of Title VII of the United States Code and Ohio law and Unlawful Retaliation in violation of Ohio law. In addition, Ingram alleges Breach of Fiduciary Duty and Civil Conspiracy claims in violation of Ohio law."  (ECF # 28).  More importantly, the Sixth Circuit determined the same in its Opinion (ECF # 96) wherein it held "Her complaint raised six claims: (1)due process; (2) equal protection; (3)sex discrimination under Title VII of the Civil Rights Act of 1964; (4) sex discrimination and retaliation under Ohio law; (5) breach of fiduciary duty; and (6) civil conspiracy."  Thus, the Sixth Circuit's characterization is binding on this Court and the Court holds plaintiff cannot for the first time in a summary judgment raise a claim not raised in her complaint.  However, because retaliation claims under Ohio law and Title VII are analyzed similarly, the disposition of one is dispositive of the other.

first complained to Acomb about Plaintiff's emails to him on September 22, 2017.  (Acomb depo pg.  32).   Acomb testified he read Plaintiff's September 22, 2017 email to Davis wherein she indicated she was "upset" with him.  (ECF # 111-7).  Acomb counseled Davis to stop communicating with Plaintiff.  In emails exchanged between Davis and Plaintiff on September 22, 2017, Davis informed Plaintiff they should have no further communications and Plaintiff agreed.  (Id.).  Thereafter, Acomb met with Plaintiff in October of 2017 wherein he believed he reached an understanding with Plaintiff that she would no longer contact Davis as she no longer had a student in his class and was not volunteering in his class.  (Acomb depo. Pg . 47).  Plaintiff expressly stated she did not discuss any alleged misconduct by Davis with Acomb in this meeting.  (ECF # 111-11 pg 5).  "In order to preserve a positive working relationship with Mr. Acomb, for whom I hoped to work in the future I complied with his request without detailing the problems I had with Mr.  Davis." [3]   Sometime after the meeting, Plaintiff wrote a note to Acomb thanking him for his professionalism and noting that she had tried to resolve her differences with Davis but that Davis appeared unwilling to do so.  Plaintiff concluded, " I know your expectations and I will honor them completely."  (ECF # 111-21).

In her Preliminary Statement (ECF # 111-11), Plaintiff recalled that Acomb threatened her in the October 2017 meeting with removal from all her work at Lewis should communications with Davis continue.  Acomb further "commanded" her to have no further contact with Davis.  (Id.).  However, Plaintiff's Preliminary Statement characterization of her

---

[3]   In her Opposition Brief to Defendants' Motion for Summary Judgment Plaintiff argues that Acomb never issued an ultimatum but instead merely asked Plaintiff to be professional and Plaintiff agreed.  (ECF # 115 pg 8).  However, Plaintiff's Preliminary Statement (ECF# 111-11 pg 5) contradicts this representation.  ("He commanded me to have no contact with Mr.  Davis through email...") (emphasis added).

October 2017 interaction with Acomb is belied by her note to Acomb after the meeting which read "Kasey and I both appreciate your fair leadership and kind support, which will allow me to continue my volunteer work in the building..." (ECF # 111-21).  This is an example of, and presents a serious issue in this case concerning evidence presented by Plaintiff that does not comport with the representations made in her Motion and briefs.  Many of Plaintiff's representations require the reader to speculate on her meanings of certain words or phrases that are not evident from the language used, or appear to contradict her own later writings or actions. The Court will discuss these issues in depth later in the Opinion.

Plaintiff argues that Davis misrepresented that the notes he received in his school mailbox in October of 2017 were from Plaintiff.  Plaintiff contends there is no evidence to support such a claim and further contends these allegedly fabricated notes were the reason Acomb met with her in October 2017.

In December of 2017, Davis again complained to Acomb that Plaintiff was communicating with him despite both Davis's and Plaintiff's agreement not to do so.  Plaintiff admitted she reached out to Davis after her agreement not to do so, but claims she received unsolicited phone calls from a Mentor phone number which she believed were from Davis. Plaintiff knew Davis lived in Mentor and believed these calls indicated Davis wanted to resolve their issues.  However, there is no proof that it was Davis that called Plaintiff's number.

The Court finds that the March 14, 2018 disposition, which determined Plaintiff harassed Davis and consequently could not substitute teach nor volunteer as Lewis Elementary, was not unlawful retaliation for her December 2017 or February 2018 complaints.  There is no dispute that Plaintiff was told by Acomb in October 2017 to have no further contact with Davis or she

21

would be restricted from volunteering and substitute teaching at Lewis.  See Plaintiff's

Preliminary Statement (ECF #111-11 pg.  5) (Acomb Depo.  pg. 77).  There is also no dispute

Plaintiff thereafter emailed Davis on multiple occasions, resulting in Davis's complaint to the

administration and Plaintiff's subsequent restrictions.   Acomb testified that all Plaintiff had to

do was not contact Davis and no restrictions would have been applied.  (ECF # 111-18 pg.  128).

Both Plaintiff and Davis made formal complaints against each other in December of 2017 and the

investigation began in December of 2017.  However, because the threatened consequence of

continued communication was issued in October 2017, prior to Plaintiff filing her complaints, the

Court finds Plaintiff has not shown a causal connection between the filing of her complaints and

the March disposition.

**Biased Investigation**

According to her Complaint, Plaintiff alleges Defendants Bolden and Regano conducted a

biased and improper investigation by:

1)   Not providing Plaintiff with the allegations against her in Davis's 2017 complaint.

2)    Not providing an opportunity to respond before the March Disposition.

3)    Not removing themselves from the investigation due to a conflict of interest as both

Bolden and Regano were respondents to Plaintiff's February 27th complaint.

4) Contrary to Defendants' representation, Plaintiff never agreed to restrictions against

her volunteer work and substitute teaching in December 2017.  She only agreed to behave

professionally.

5) On April 1, 2018 Clifford sent Siegel her investigation Report, Siegel sent it to Regano

and Regano sent it to Bolden.  Siegel's disposition was completed on April 5, 2018 therefore,

Regano and Bolden both had an opportunity to review and influence the Siegel's final disposition.

6) In subsequent appeals Regano and Bolden continued to improperly participate in the investigations.

The Court has already held that Plaintiff cannot assert that Regano's March 2018 disposition restricting Plaintiff's volunteer and substitute teaching work at Lewis was an adverse employment action because the Sixth Circuit affirmed this Court's finding that res judicata barred such a claim.  Instead, the Sixth Circuit determined that Plaintiff could assert that a biased investigation that altered the terms and conditions of Plaintiff's of her employment could constitute an adverse action.  However, the Sixth Circuit acknowledged that such a contention was a "slim reed on which to preserve a claim," yet held that it should be addressed by the Court after discovery.

Now that discovery is complete, the Court finds that Plaintiff's retaliation claim fails because Plaintiff has not shown an adverse employment action.  Furthermore, Plaintiff cannot show a  causal connection between her protected activity in filing her complaints and a biased investigation that altered the terms and conditions of her employment.

Plaintiff alleges she was not apprised of the claims against her during the investigation of the cross complaints of harassment brought by both Davis and Plaintiff.

According to the District's anti-harassment policy, complaints may be brought under both the informal complaint procedure or formal complaint procedure.  A formal complaint may be oral or in writing.  (ECF #1-1 PGID# 37).  If not in writing, the complainant must provide sufficient details to the compliance officer.  After an interview with the complainant, the

compliance officer shall write a summary of the details of the harassing conduct and the

complainant shall sign the summary.  (Id.).  The investigation commences within two days of the

receipt of the formal complaint.  When the investigation commences the compliance officer must

consider how to protect the harassment victim during the course of the investigation.  (Id)

Along with commencing the investigation, the investigator shall inform the subject of the

complaint about the nature of the allegations and provide them with a copy of any relevant

administrative guidelines, including the Board's anti-harassment policy.  The Respondent must

also be informed of the opportunity to submit a written response to the complaint within five

business days.  (*Id*.).  The anti-harassment policy directs the compliance officer or investigatory

designee to attempt to complete the investigation within fifteen business days of the receipt of the

complaint.  The investigation shall include: interviews with the complainant, respondent and any

witness who is reasonably expected to possess  information relevant to the allegations, along with

any documents or evidence provided by complainant and respondent or other witness relevant to

the allegations.  (*Id* at 37-38).  At the conclusion of the investigation the compliance officer or

designee shall provide a written investigation report to the Superintendent that includes the

officer or designee's recommendations.  Then within five days of receipt of the written report,

the Superintendent shall issue a decision or order additional investigation.  If a decision is

reached, it shall be provided to both the complainant and respondent, who will then have the

right to appeal to the Board.  Afterwards,  the Board may choose to conduct a further

investigation using an outside source.  (*Id.* at 38).

Against this backdrop, a review of the evidence before the Court demonstrates that

Plaintiff has failed to meet her burden to show that the investigation was biased and altered the

terms and conditions of her employment. Here, Davis did not provide a formal written complaint but the anti-harassment Policy does not require one. Instead, it merely requires that the District inform Plaintiff of the "nature of the allegations." (ECF # 1-1, pg. 37). Plaintiff's Preliminary Statement provided in advance of her January 2018 investigatory interview acknowledges that Davis complained to Acomb in September of 2017 about Plaintiff's continued presence at Lewis. (ECF # 11-11 pg 5). She also acknowledges that Acomb spoke to her on October 27, 2017, telling her not to communicate via email with Davis. According to Acomb, Davis's complaint involved unwanted emails from Plaintiff. Thus, the evidence before the Court demonstrates that Plaintiff had notice of the nature of Davis's complaint against her. Moreover, contrary to her characterization in her Preliminary Statement wherein Plaintiff alleges, "Rather than take steps to positively resolve the conflict, Acomb threatened me with removal from all of my work at Lewis at Mr. Davis' request." (*Id*), Plaintiff sent Acomb a note after the October 27 meeting writing, "Kasey and I both appreciate your fair leadership and kind support..." She continued, "I know your expectations and I will honor them completely." (ECF # 105-1, PGID 6444). There was nothing indicating any displeasure with the way Acomb handled the meeting. Instead, she clearly indicated a willingness to abide by his instruction not to further communicate with Davis. Plaintiff contends Acomb told her in the October 2017 meeting she had wounded Davis's ego and needed to assuage his wounded ego. (Ingram depo. ECF # 109, pg. 305, 324-325, 339). Acomb denies saying this. (ECF # 111-18, pgs 128-29). According to Plaintiff, her December 20, 2017 email to Davis describing how she was attracted to him was merely an attempt to soothe his wounded ego per Acomb's instructions.

Before she filed her December complaint, Plaintiff acknowledges Acomb told her she

could no longer volunteer or substitute teach at Lewis due to her repeated communications with Davis.  Preliminary Statement (ECF # 111-112 pg.  6).  After Davis and Plaintiff brought formal complaints in December of 2017, Regano investigated the complaints, meeting with Davis on January 18, 2018 and Plaintiff on January 11, 2018.  Regano continued to investigate by reviewing the relevant emails and other documents in the case with the intent of completing the investigation in accordance with the fifteen-day time frame set forth in the anti-harassment policy; but due to the voluminous amount of records to review, the investigation required additional time.  (ECF # 112-39 pg.  5).  In the meantime, Plaintiff, through counsel, proposed a settlement on February 2, 2018.  Davis, through counsel, responded on March 2, 2018, but on March 5, 2018, the parties determined they could not resolve the dispute.  A week later the Confidential Investigation Report was completed.  In the Confidential Investigation Report, Regano found Davis's account more credible, found Plaintiff clearly continued to communicate after agreeing not to, and continuing to do so after being restricted from Lewis by Acomb.  Regano further found evidence that Plaintiff harassed Davis as the nature of her emails grew increasingly personal, culminating in her December 20, 2017 email wherein she wrote she was attracted to Davis and that he was a danger to her marriage.   Regano found no evidence that any of Davis's emails to Plaintiff included any unwelcome, insulting or derogatory messages.  (ECF # 112-39 pgs.  25-26).

Plaintiff was interviewed by Regano to discuss her complaint and discuss Davis's harassment claim concerning Plaintiff's unwanted communications in January of 2018.  She provided a lengthy Preliminary Statement discussing in great detail her claims, her evidence and her accusation that she had not had a chance to be heard before Acomb issued his Lewis

restrictions.  In short, Plaintiff was given an opportunity to be heard on the issues as evidenced by her Preliminary Statement discussing in great detail the communications between her and Davis.

A review of the record reveals Regano had some bases for finding Davis more credible than Plaintiff.  First, it is undisputed that Davis asked Plaintiff not to communicate anymore with him and Plaintiff agreed.  After she continued to communicate with him, Davis complained to Acomb, who then discussed with her the unwanted communications, asked her to stop and again she agreed.  After she continued to communicate with Davis after being warned not to by Acomb, he restricted her from volunteering and substitute teaching at Lewis to prevent any further harassment.  Yet Plaintiff still communicated with Davis, ultimately leading to his formal complaint, the investigation and subsequent restriction.

Contrast those facts with Plaintiff's allegations against Davis, which are not based on undisputed facts, but instead rely almost entirely on Plaintiff's own subjective recollections and interpretations.

For example, Plaintiff alleges Davis harassed her by making unwanted romantic references in the classroom, such as telling his two students receiving reading assistance from Plaintiff to go with the "beautiful young lady at the door."  Preliminary Statement (ECF # 111-11 pg.  2).  However, in an email she sent to Davis on December 28, 2016 she wrote in part, "No need to bow when I come to class . .. Just remember to remind the boys to "go with the beautiful YOUNG lady at the door" . .. "young" being the important adjective ..."  (ECF#109-1, PageID 8637.).

Plaintiff further alleges Davis had his close friend, Elissa Garfield, a fellow teacher at Lewis, ask Plaintiff if she were interested in a sexual relationship with Davis in exchange for

27

full-time employment at Lewis.  (Plaintiff Brief in Opposition pg.2).  In support, Plaintiff cites the Court to her own deposition at pages 194-195.  However, a review of the cited deposition testimony says absolutely nothing about Garfield asking Plaintiff about Davis at Davis's request, nor references any quid pro quo.  Instead, Plaintiff testifies: "Because Elissa Garfield had come to me and asked me if I was attracted to him and interested in a relationship with him."  (ECF #109-1 pg 194).  When Plaintiff was asked to give additional information about the conversation with Garfield she responded.  "That was about the sum of it."  (*Id*.)  Later, Plaintiff acknowledges, " So I thought he sent her.  I thought that Randy Davis had sent Elissa Garfield to me."  (*Id* at pg.  197).  Thus, it was entirely based on Plaintiff's own subjective beliefs with no grounding in any outside evidence.  There is no corroborating evidence such as testimony from Garfield that she was acting at the behest of Davis and there is no testimony even from Plaintiff that there was any quid pro quo offer made by Garfield on behalf of Davis in the cited materials.

Similarly, Plaintiff cites to emails early on between her and Davis wherein Davis said Plaintiff was "the reason he got up in the morning"; directed Plaintiff to call him over winter break because he was bored; used the phrase "I love you"; and manipulated her into calling him "wonderful" as evidence of harassment.  However, while technically accurate, the emails in their full context do not indicate any overt sexual harassment.  On August 29, 2016, Plaintiff provided dates of availability she could help in Davis's class.  Davis responded, " Please don't get me wrong but I love you for doing this!!  I can't even believe it.  This child is so lucky to have you as am I.  Thank you so much."  (ECF # 115-2 PgID 11781).

On December 21, 2016, Plaintiff wrote Davis an email telling him they should talk after the New Year about the upcoming semester starting in January.  In response Davis wrote, "Can

we talk during break?  My home phone number is (court omitted).  I'll be bored after two days

home so call anytime.  (But leave a message–since I am bored I am doing something and am not

around to answer the phone." (*Id* at 11796).   When Plaintiff informed Davis she was changing

her schedule to come in the next day Davis responded,  " And this is the reason I will get up

tomorrow Meribethe." (*Id* at pg. Id. 11805).  Again, these email exchanges do not contain any

overtly sexually harassing statements by Davis to Plaintiff.  Moreover, Plaintiff never

complained to the administration about Davis's emails until after Davis complained to Acomb.

Nor did she tell Davis to stop such emails.  In fact, her responses to such emails were generally

friendly and indicate a good natured response with no indication they were ill received.  Based on

these communications, it is not unreasonable that Regano determined that Davis did not engage

in  any harassing conduct.

Perhaps most damning though was Plaintiff's December 20, 2017 email to Davis after

Acomb had imposed his restrictions.   The email begins, "Of course I am attracted to you."  It

proceeds to describe her growing feelings for Davis and her belief that he was also attracted to

her.  She describes that as their emails grew more friendly she realized he was a danger to her

and she was a danger to him.  She chides Davis for sharing their emails with Acomb.   She talks

about the devastating effects on both their families if they had both acted on their attraction.  She

writes "in the end I am just attracted to you, as I believe you were to me, but I don't really know

you." (ECF # 111-26).

However, in her Preliminary Statement submitted roughly two weeks after the December

20 email, Plaintiff goes to great lengths to describe her motivations behind and intent of the

December 20 email.  She describes the intent of her December 20 email was to assuage Davis's

ego and upset the balance of power between Acomb and Davis once Plaintiff left Lewis.  Most importantly though, Plaintiff writes, "I cobbled together an email and letter from a combination of fact and fiction..." (ECF # 111-11 pgs 12-13).  She then proceeds with a paragraph by paragraph analysis of her email.

In light of the above, the Court finds  the investigations' conclusions were not the product of a biased investigation.  The undisputed evidence shows Plaintiff kept communicating with Davis after he asked her not to, after she agreed not to, and after she was warned not to by Acomb.  Yet she persisted to do so even after she was restricted from working or volunteering at Lewis.  Moreover, it was reasonable for them to conclude in Davis's favor based on the undisputed evidence.

Plaintiff insists that  Bolden's and Regano's participation in the post-February 2018 retaliation complaint investigation, though both were respondents, demonstrates unlawful retaliation and tainted the entire investigation.  Although Regano issued his disposition of the December complaints shortly after Plaintiff filed her February 27th complaint, the undisputed evidence shows the investigation was completed prior to the February 27th complaint and that the delay was to accommodate the parties' attempts at settling the dispute.  Moreover, as the Sixth Circuit has held, "[w]hen the employer 'proceed[s] along lines previously contemplated,' we must not take the temporal proximity of the adverse employment action as evidence of causality."  *Montell v. Diversified Clinical Servs., Inc.,* 757 F.3d 497, 507 (6th Cir. 2014) quoting *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 272, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).  Here, the investigation began nearly two months before Plaintiff named Regano and Bolden as respondents.  The investigation had concluded and the announced result had simply confirmed

Plaintiff's restrictions from substitute teaching or volunteering at Lewis. Therefore, the temporal proximity between the disposition and her complaint do not support a retaliation claim.

In addition, the evidence before the Court does not support a claim that either Bolden's or Regano's involvement in any way influenced or directed the investigation. Upon being informed he was a respondent in the February 27th complaint, Regano brought in a private attorney, Mary-Kathleen Clifford, to conduct the investigation into Plaintiff's February 27th Complaint. Clifford decided whom she wanted to interview. (ECF# 115-26). Clifford testified that per the terms of her contract with Defendants, she controled the investigation, including who she interviews. (ECF # 102-1 pg 15). Due to trying to schedule witnesses and work around teacher schedules, Clifford usually requires a liaison at a school to help coordinate the witness schedules; and that liaison was Bolden. (*Id* at 15-16). Bolden was Clifford's liaison for document and video production also. *(Id* at 31). Clifford received every document she requested without any resistance from Bolden. (*Id*.). Clifford testified she would send her drafts of witness statements to witnesses for review but her report was final and was not subject to comment or changes from the District. (Id at 36). Clifford testified neither Bolden nor Regano had any influence over her conclusions. (Id). Based on her interviews with numerous witnesses, including Bolden, Plaintiff and Regano, Clifford concluded there was no retaliation.

Plaintiff alleges the investigation was biased due to the inherent conflict of interest in Bolden's participation; Bolden and Regano's influence over the investigation; Bolden's handling of witness statements; Bolden's facilitating communications with the District's IT department to retrieve emails and videos; Bolden's handling redaction issues of the emails and video; Bolden's coordinating the gathering of documents and exhibits; and the ultimate failure to have a

compliance officer not named as a respondent provide the logistical support.

"For an act to constitute an actionable adverse employment action under R.C. 4112.02(I), the plaintiff must show that a reasonable employee would have found the challenged action materially adverse, i.e., that it " 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' *Blagg v. S.T.O.F.F.E. Fed. Credit Union,* 2024-Ohio-2579, ¶ 75.

"To prove a causal connection, [a plaintiff] must produce sufficient evidence from which an inference can be drawn that the [defendant] took the adverse employment action because [the plaintiff] engaged in protected activity." *Singfield v. Akron Metro. Hous. Auth.,* 389 F.3d 555, 563 (6th Cir. 2004).

What is missing from Plaintiff's evidence is any showing that Bolden or Regano materially affected or influenced Clifford's conclusions so as to create a biased investigation that materially altered the terms and conditions of her employment.  There is no evidence that Bolden's facilitating of the scheduling of witnesses materially affected their testimony or that he in anyway influenced their testimony.  Nor can Plaintiff show that any documents retrieved by Bolden were materially altered so as to influence Clifford's recommendation.  Plaintiff has not shown that Bolden selectively picked evidence to provide Clifford that was favorable to Davis and against Plaintiff.  Clifford's recommendations were not influenced nor altered by any actions of Regano or Bolden.  The evidence presented to the Court demonstrates that Bolden's involvement was entirely logistical given his position in the school district and had zero effect on the outcome of the Clifford investigation.

Likewise, the emails cited by Plaintiff from Regano to Bolden, Bolden to Regano and

Regano to Siegel, do not evidence a biased investigation due to a retaliatory animus.  There is no question Bolden and Regano headed the initial investigation of both Davis's and Plaintiff's December 2017 complaints; but at that time neither was named as a respondent in any complaint. Nor is there any question that their roles in the initial investigation were appropriate as Bolden was a compliance officer and Regano was superintendent of the District schools.  However, when Plaintiff complained in February 2018, naming Bolden specifically and Regano generally, the investigation of the February complaint was turned over to Clifford.

On March 6, 2018, Clifford emailed Regano about the parties she wanted to interview, the documents she wanted and the location information where the interviews would take place. (ECF # 112-19).   Regano testified that it was the school's counsel that recommended Clifford. (ECF # 112-20 pg.3).  In response, Regano emailed Bolden to say "Let's talk."  Regano then testified he discussed with Bolden that he wanted Bolden to handle Clifford's investigation.  (*Id.* at 4).  Regano denied talking to any witness identified by Clifford.  (*Id* at 6-7).  Bolden testified he did not believe he was actually involved in the investigation as his only role was to set up interviews for Clifford and to arrange with Acomb to have substitutes covering classes during the times teachers were being interviewed by Clifford.  (ECF # 112-5 pg.  12).  Bolden further testified that when Regano said "let's talk," they discussed Bolden's role in facilitating Clifford's investigation.  (*Id.*  at 13).

Plaintiff alleges Bolden handled the drafts of witness statements, citing an email from Clifford to Bolden on March 19, 2018; but the email states that Clifford sent draft statements to certain identified witnesses via email but she received return messages only for some.  Clifford asked Bolden to forward the email to the identified witnesses to see if they received the emailed

33

drafts and if not, to provide Clifford with a proper email address. (ECF # 112-26). The email does not purport to contain the draft statements. Bolden coordinated with the District's IT department to produce emails requested by Clifford. (ECF 112-4 pg 43-44). Bolden also testified he had to redact certain video footage per federal statute that contained children's faces. He provided the redacted version to Plaintiff and the unredacted version to the District's legal counsel. He testified he was the only person in the District who knew how to do the redaction. He also testified he redacted dead air time to shorten the video. (ECF # 112-13).

Plaintiff also contends that Defendants kept the compliance officer, Debbie Siegel, out of the loop of the investigation until Clifford finished her Report. It was only then that Bolden instructed Clifford to send it to Siegel. Upon receipt of the Report, Siegel reached out to Bolden asking what she was supposed to do with the Report. Regano told her to hold on to it and they would talk. (ECF #112-30). Clifford sent the report to Regano a mere two days before Siegel issued her April 5, 2018 disposition adopting the Clifford conclusions exonerating Bolden and Regano. Siegel testified that because she had no involvement in the underlying investigation, she was a neutral and was tasked with reviewing the Clifford Report and adopting or rejecting it. Siegel testified she spent many hours reviewing the Report and Exhibits, thought it was thorough, agreed with its recommendations and adopted it. (ECF 112-34 pg 12). Siegel testified she did not consult with Regano or Bolden before issuing her decision. (Id.).

Again, Plaintiff's arguments point to the involvement of Bolden primarily and Regano, in certain aspects of the investigation of her retaliation complaint, but there is simply no evidence beyond pure speculation that they influenced the outcome in anyway. Nor is there any evidence that Bolden altered, fabricated or directed evidence or testimony to achieve a particular outcome.

Plaintiff has produced no evidence that the videotape edits Bolden made contained evidence relevant to the investigation, nor that he altered any witness statements made during the course of Clifford's investigation, nor that he doctored the emails he collected from IT in the course of the investigation.  As a result, the Court finds Plaintiff has failed to meet her burden by showing an adverse employment action as a result of a biased investigation.

Moreover, the same applies to Plaintiff's subsequent appeals to the Board.  According to Plaintiff, Regano and Bolden were improperly involved in the appeals process, but the Court has already determined that their minimal involvement in the investigation conducted by Clifford does not demonstrate a biased investigation.  In addition, Plaintiff contends the Board relied on documents never seen by Plaintiff that were shredded shortly thereafter.  However, a review of the deposition of former Board member Marilyn Thomas demonstrates she made her decision to affirm the underlying conclusions of the investigation that Plaintiff was the harasser based largely on Plaintiff's own undisputed email wherein she describes her relationship with a married man. Thomas testified, "And it was almost like grooming  Mr. Davis, you know, being very nice and doing her work and helping him out.  And then when I read that letter, all the accusations she had about Mr. Davis was put in a different light."  (ECF # 114-1, pg 91).  She further testified,  "And that letter actually appalled me when I hear the accusations on Mr. Davis."  (Id).  Thomas testified that otherwise it was "he said she said," but that email from Plaintiff to Davis was something concrete she could rely on.  (Id).  Plaintiff appears to allege this letter either never existed or was destroyed, however, Plaintiff's letter to Davis attached to Plaintiff's own Preliminary Statement as Ex.  3 and was part of the investigation, describes Plaintiff's conduct with a married school psychologist.  This letter would have been reviewed by the Board,

including Thomas.

Plaintiff also cites to the deposition of John Heckman, claiming that anything he had been given to read for the appeal had been destroyed sometime thereafter. (ECF # 107-1 pg. 43). What documents those were, whether copies or originals, is not clear, nor does Plaintiff point to any specific document that is not in the record that was relied on in making the Board's decisions. In addition, the state court found no evidence of destruction of relevant materials in Plaintiff's parallel proceedings.

Finally, Plaintiff contends the use of the Taft Law Firm, another outside third party investigator into Plaintiff's complaints that found no retaliation, is further proof of bias. The District's contract with Taft indicates that the District paid for Taft's services, required a confidentiality agreement and gave the District control over the investigation. Moreover, the agreement between Taft and the District appointed Board President John Heckman and Tim Pickana as "District Relationship Partners" with Taft for the internal investigation. Under the terms of the contract, Heckman and Pickana were deemed the decision makers in the investigation and were the individuals responsible for the key decisions in directing the investigation. The Taft personnel were authorized to interview witnesses and request any documents needed in their investigation. (ECF # 115-51). They were tasked with investigating the Plaintiff's claims, producing findings for the Board and recommending corrective measures if needed. In short, there is nothing indicating that Regano or Bolden somehow influenced the Taft investigation, aside from Plaintiff's bald assertions that Heckman and Regano were longtime friends and that the Taft investigation was tainted becauseTaft had worked for the District in the past.

In a very real sense, Plaintiff seeks to add complexity to what is largely a straightforward and simple inquiry.  Insofar as Davis's complaint is concerned, Davis complained about receiving unwanted communications from Plaintiff and he wanted it stopped.  Plaintiff knew of this allegation directly from Davis and then from Acomb, was warned by Acomb not to continue with the unwanted communications or face restrictions; and yet Plaintiff continued to send Davis emails.  This evidence was obtained by the District, was conceded by Plaintiff and the school found Plaintiff to have engaged in ongoing harassing behavior by continuing to communicate with Davis when there was no valid, work- related reason to do so.

Plaintiff's own sexual harassment allegation requires consideration of uncorroborated evidence as the emails themselves do not support such an allegation.  As described in detail earlier, a look at Plaintiff's evidence demonstrates that Regano had sufficient grounds from which to conclude that Plaintiff was not harassed by Davis.  Thus, the Court finds Plaintiff has failed to demonstrate an adverse employment action arising from Defendants' investigation of the initial harassment claims and from Defendants' conduct during the investigation of Plaintiff's February retaliation complaint and subsequent appeals.

Even if Plaintiff could satisfy her prima facie burden, Defendants can show a legitimate, non-retaliatory reason for their actions.   Defendants have produced evidence that their March disposition and April disposition were the result of investigations that ultimately concluded Plaintiff harassed Davis, and that the investigation of the same was not the result of retaliatory animus, but was intended to stop harassment in the workplace.

"To rebut the employee's prima facie case, the employer may provide a legitimate, nonretaliatory reason for the adverse action; this is merely a burden of production, not of proof."

*Martin,* 606 F. Supp. 3d at 649.  Once a defendant meets its burden to articulate a legitimate, non-retaliatory reason for the adverse action, the burden shifts back to plaintiff to show that the stated reason was pretext.  "To meet [his] burden on pretext, the plaintiff must produce evidence sufficient that a reasonable finder of fact could reject the employer's proffered reason." *Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 596 (6th Cir. 2007).  "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 393 (6th Cir.2008).  Pretext "is a commonsense inquiry: did the employer [take action against] the employee for the stated reasons or not?" *Chen v. Dow Chem. Co.,* 580 F.3d 394, 400 at n.4 (6th Cir. 2009).  Courts may not second-guess the business judgment of an employer but must instead determine "whether the employer gave an honest explanation of its behavior." *Hedrick v. W. Res. Care Sys.,* 355 F.3d 444, 462 (6th Cir. 2004).  "Time and again we have emphasized that [o]ur role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." *Corell v. CSX Transp., Inc.,* 378 F.App'x 496, 505 (6th Cir. 2010) quoting *Risch v. Royal Oak Police Dept.,* 581 F.3d 383, 399 (6th Cir. 2009).

Plaintiff argues that Defendants' stated legitimate reasons for their actions were not the actual reasons.  According to Plaintiff, Defendants had no intention of making a decision on the December harassment claims because they had failed to enter a decision in at least two other earlier complaints of harassment by other employees.  Plaintiff offers the 2012 emails of Leah Dustin wherein she describes Bolden's conduct as harassing (ECF #'s 118-2, 3),  along with an email from 2017 from a Kristen Walter in the transportation department giving notice of her

resignation due to a harassing, bullying and a toxic work environment.  (ECF 118-4).  According to Plaintiff, these emails are evidence that other complaints of harassment were never issued dispositions.  In addition, Plaintiff cites to an email from Davis to a Mary Jo Davis, wherein Davis complains that "I can't imagine signing Joe's document that proclaims nothing ever happened and to let her go unaccounted for.  I know this isn't my job, but I think I've been tagged 'it'."  (ECF # 118-5).  Plaintiff argues this demonstrates that Regano's March 2018 disposition finding Plaintiff was the harasser was pretextual as Davis complains that Regano wanted Davis to sign a document admitting Plaintiff did nothing wrong.  Because this email was written prior to Plaintiff's February 27 retaliation complaint, Plaintiff argues it shows that prior to the retaliation complaint Regano was not going to find Plaintiff harassed Davis.

The Court does not find these emails demonstrate pretext.  First, the Walter email is a resignation notice that describes why she is resigning and does not raise a complaint of harassment to be investigated.  Likewise, Dustin's emails outline her complaints about the harassing behavior of Bolden during a dispute over curriculum.  The emails reflect Dustin's desire to resolve the dispute either through a sit down with Regano and Bolden or through her Union Representative.  The last email indicates she was awaiting guidance from the Union and the District on how to resolve the matter.  There is nothing in the emails indicating she ever pursued a formal complaint nor is there any indication in the emails what was the result.  In short, it provides no evidence relevant to how Regano had previously conducted harassment complaints.

Plaintiff's interpretation of the Davis email would require the fact-finder to speculate.  The email could just as reasonably illustrate settlement negotiations.  It is dated February 23,

39

2018, which coincides with Regano's representation that the parties were considering Plaintiff's proposed resolution proffered on or about February 2, 2018.  However, on March 5, 2018, the parties determined they could not resolve the matter amongst themselves.  (ECF # 112-39 pg.  5).  Moreover, there is no indication what is meant by "Joe's document."  Whether it represents something drafted presumably by Regano, it appears to have been related to the resolution efforts of the parties with the agreement that neither side did anything wrong, which is typical of settlement discussions.  As such, the Davis email does not necessarily reflect the conclusion about Plaintiff, but instead may simply reflect attempts of compromise and does not offer evidence of pretext.

Therefore, the Court finds against Plaintiff and for Defendants on Plaintiff's claim of Retaliation.

## Sex Discrimination Under Title VII and Equal Protection and Ohio Law

Plaintiff asserts a claim for unlawful discrimination based on her sex under Title VII and Ohio law.  Title VII's anti-discrimination provision makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).   To meet her Title VII prima facie burden plaintiff must show: "(1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently from similarly situated members of the unprotected class."  *Knox v. Neaton Auto Prod. Mfg., Inc.,* 375 F.3d 451, 456–57 (6th Cir. 2004).  The prima facie case requirements are essentially the same under the Ohio Revised Code § 4112.02.  (*Id* at 457).

40

"To prove a violation of the equal protection clause under § 1983, [a plaintiff] must prove the same elements as are required to establish a disparate treatment claim under Title VII, i.e., under the *McDonnell Douglas/Burdine* framework." *Lautermilch v. Findlay City Sch.,* 314 F.3d 271, 275 (6th Cir. 2003) quoting *Jachyra v. City of Southfield*, No. 95–1009, 1996 WL 520795, at *3 (6th Cir. September 12, 1996) (citing *Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir.1988))..

The parties do not dispute that Plaintiff is a member of a protected class.  However, for the same reasons as those stated in the Court's determination of Plaintiff's Retaliation claim, the Court finds Plaintiff has not established a prima facie claim because she cannot show she suffered an adverse employment action from a biased investigation that altered the terms and conditions of her employment.  This is fatal to her claims.  However, the Court further finds she cannot show she was treated differently than a person outside the protected class.  The Sixth Circuit requires plaintiffs to show three elements to demonstrate that employees are similarly situated: (1) the employees "dealt with the same supervisor[;]" (2) the employees were "subject to the same standards[;]" and (3) the employees had "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Leeth v. Sec'y of Veterans Affs.,* No. 3:21-CV-132, 2024 WL 555928, at *6 (S.D. Ohio Feb. 12, 2024) *Id.* (quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992)).  Here, Plaintiff was a substitute teacher and volunteer while Davis was a full time teacher.  While both appeared to answer to Acomb, Davis as a full time teacher,  was also part of the Solon Education Association Union that Plaintiff was a union member as a substitute teacher. (ECF # 106-1 pg 79, 140).   While the investigations were conducted simultaneously, any

41

differences as described previously were driven by the differing nature of the claims, the fact that Plaintiff was represented by her husband and Davis was not and Plaintiff filed a written complaint, while Davis made a verbal complaint.  The investigation involved largely the interviews and reviews of the emails in question.  Nowhere in the record is there any overtly sexist statements that would support a finding that the investigation was biased due to Plaintiff's sex.  And a plain review of the emails between Davis and Plaintiff undisputedly show she continued to contact him against his wishes and in clear violation of Acomb's instructions to her. Moreover, Plaintiff's representations of the content of Davis's communications with her are often strikingly at odds with the plain language therein and do not create genuine issues of fact.

Again, assuming arguendo she could meet her prima facie burden, Defendants have demonstrated a legitimate, non-discriminatory basis for their conduct in investigating allegations of harassment.  Upon a finding of harassment, Defendants took reasonable actions to prevent further occurrence of the same.  And, as discussed previously, Plaintiff fails to produce any competent evidence of pretext that would overcome Defendants' legitimate, non-discriminatory evidence.

As a result, Defendants are entitled to summary judgment on Plaintiff's Equal Protection and Sex Discrimination claims under Title VII and Ohio law.

**Civil Conspiracy**

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985).  "To prevail on this claim, a plaintiff must show 'that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the

conspiracy.'"  *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016) quoting *Heyne v. Metro. Nashville Pub. Sch.,* 655 F.3d 556, 563 (6th Cir. 2011) (citation omitted).  "Although circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.*  To prove conspiracy, plaintiffs must show (1) "that there was a single plan," (2) "that the alleged coconspirator shared in the general conspiratorial objective," and (3) "that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant."  *Hooks,* 771 F.2d at 944.

"Plaintiff need not prove an express agreement among the conspirators, nor must they show that each conspirator knew 'all of the details of the illegal plan or all of the participants involved.'"  *Rieves v. Town of Smyrna, Tennessee,* 67 F.4th 856, 862 (6th Cir. 2023) quoting *Hooks,* 771 F.2d at 944.   "In order to survive summary judgment, plaintiffs asserting a civil conspiracy can "rely on circumstantial evidence to establish an agreement among the conspirators," *Rieves,* 67 F.4th at 862 citing *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012).

In opposition to Defendants' Motion for Summary Judgment, Plaintiff relies on her contention that Defendants engaged in a biased investigation in response to Plaintiff's retaliation claim against them.  For the reasons stated previously, the Court does not find the Defendants' actions in the investigations exhibited any retaliatory animus nor resulted in a biased investigation.  Therefore, the elements of a Civil Conspiracy are not met.

**Conclusion**

Therefore, for the foregoing reasons, the Court denies Plaintiff's Motion and grants

43

Defendants' Motion for Summary Judgment on all Plaintiff's remaining claims.

IT IS SO ORDERED.

/s/Christopher A.Boyko
CHRISTOPHER A. BOYKO
United States District Judge